TERRITORY OF HAWAII, BY ITS ATTORNEY GENERAL
*v.* JENNIE L. AONA, ET AL.

No. 4114.

ARGUED APRIL 29, 1959.          DECIDED MAY 20, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

254

OPINION OF THE COURT BY MARUMOTO, J.

In a proceeding instituted in the circuit court of the first circuit by the attorney general on behalf of the Territory of Hawaii, at the request of the superintendent of public works, for the condemnation of land in Puunui, Honolulu, for use as a site for Rehabilitation Center for Blind and Physically Handicapped Persons, D.P.W. Job No. 5889, Item 1-F, Act 273, S.L.H. 1955, the court entered an interlocutory judgment in which it held that the proceeding is authorized by law, that the superintendent of public works did not abuse his discretion in deciding that it is necessary to condemn the land for such use and that such use is a public use under the Fifth Amendment to the Constitution of the United States, sections 5 and 55 of the Hawaiian Organic Act, and section 8-2 of the Revised Laws of Hawaii 1955. This appeal is from the interlocutory judgment.

Appellants are claimants of interest in the land sought to be taken. They specify three errors of the circuit court on which they rely, but the specification covers different phases of one basic issue, which is whether the safeguards to the taking of private property required by the Fifth Amendment have been observed in this proceeding.

The statutory provisions that govern this proceeding were enacted in Act 12 of the Session Laws of 1951, and are compiled in R.L.H. 1955, §§ 8-2, 8-12, and 8-32. Section 8-2 simply provides that "Private property may be taken for public use." Section 8-12 authorizes the attorney general to institute a condemnation proceeding at the request of the head of any department. Section 8-32 provides: "If the defendant in his answer, * * * denies that the use for which the property sought to be condemned is a public use, * * * the issue may, upon the motion of any party, be set for immediate trial, without a jury and without regard to position on the calendar. An interlocutory appeal shall lie from the decision

on such issue, and such appeal shall be given precedence in the supreme court." These provisions are in compliance with section 55 of the Organic Act, as amended by the Act of May 27, 1910, 36 Stat. 443, s. 4, which authorizes the legislature to provide by general act for the condemnation of property for public uses.

This proceeding was instituted by the attorney general at the request of the superintendent of public works. The petition contains an allegation of public use for which the land is sought to be condemned. Appellants interposed a defense that "the use for which the property is sought to be condemned is not a public use." The issue raised by the defense was tried in the circuit court pursuant to R.L.H. 1955, § 8-32. Thus, there has been a literal compliance with the statutory provisions.

However, appellants contend that literal compliance with statutory provisions is insufficient; that the power of eminent domain is an extraordinary power, the exercise of which is surrounded by procedural safeguards developed under the Fifth Amendment, among which are the requirements of legislative declaration of public use and legislative finding of necessity for the condemnation; and that the instant proceeding does not meet the constitutional requirements because it is not based on such declaration and finding.

The Fifth Amendment provides that no person shall "be deprived of * * * property, without due process of law, nor shall private property be taken for public use, without just compensation." The due process provision requires no more than that an opportunity to be heard be given to interested parties at some stage of the proceeding upon reasonable notice. (*Oakland* v. *United States*, 124 F. [2d] 959.) The amendment does not expressly require that there be a legislative declaration of public use or a formal legislative finding of necessity. We are not aware of any decision which has construed the amendment as requiring such declaration and finding as a prerequisite to the filing of a condemnation proceeding.

A territory derives its power of eminent domain from the grant in its organic act of legislative power over all rightful subjects of

legislation. (1 Nichols, *The Law of Eminent Domain*, 3rd ed., § 3.14; 29 C.J.S., *Eminent Domain*, § 20.) The primary authority for the exercise of the power resides in its legislature. The legislature may exercise the power itself. However, the normal practice is for it to delegate the function to public officers or agencies or to private corporations vested with the power of eminent domain. The delegation may be coupled with a legislative declaration of public uses. The effect of such declaration is to restrict the exercise of the power to the uses included in the declaration. (1 Nichols, *ibid.*, §§ 3.2, 3.21; 29 C.J.S., *Eminent Domain*, §§ 21, 87-89.) But the question as to whether any use is a public use is ultimately a judicial one, and there is no principle of law which debars the legislature from leaving the question exclusively to judicial determination without prior action on its part. (2 Nichols, *ibid.*, § 7.4; 18 Am. Jur., *Eminent Domain*, § 46; 29 C.J.S., *Eminent Domain*, § 30.) As is stated in *Washington Water Power Co.* v. *Waters*, 186 Fed. 572, 576: "There is no inherent difficulty in authorizing the courts to perform the function. It is not extrajudicial in its nature, and is closely akin to inquiries which the courts are ordinarily under the necessity of making when the right to condemn is put in issue."

In this Territory, condemnation was limited to public uses set forth in R.L.H. 1945, § 301, and other uses declared by the legislature to be public in specific legislation, until the enactment of Act 12 of the Session Laws of 1951. But the act amended section 301 by deleting the enumeration of public uses and substituting the general language that "Private property may be taken for public use." The legislative intent in making the amendment may be discerned from the following statement in the report of the Committee on Judiciary of the Senate, Senate Journal 1951, p. 541: "Further this measure provides generally that the power of eminent domain may be exercised for any 'public use' instead of, as at present, attempting to define minutely each public use or purpose. Your committee believes that the question as to whether any particular use is a public use so as to permit the exercise of the power of eminent domain for the acquisition of property for such

purpose, is a judicial one under the Constitution and the Hawaiian Organic Act (or State Constitution, when Hawaii becomes a State), and that it is neither necessary nor desirable for the legislature to attempt to define each particular public use." The amendment, however, did not render prior legislative declarations totally inefficacious. The legislature stated in section 6 of the act: "The amendment of section 301 of said Revised Laws by this Act shall not be interpreted as a legislative declaration that the purposes enumerated in said section before amendment are not public purposes, but said section 301, as so amended, shall be deemed to include all public purposes specifically mentioned therein before such amendment and any other and additional public purposes."

The act was silent as to who shall determine "any other and additional public purposes." In view of such silence, appellants contend that the amendment did not eliminate the necessity of legislative declaration of new public uses, except possibly where the other and additional purposes, under the rule of *ejusdem generis,* fall within the categories of uses previously declared by the legislature to be public.

Our opinion is to the contrary. The general rule is that a legislative declaration creates a presumption of public use. But the rule is different in the states whose constitutions provide that the question of public use is purely judicial. In such states the question is judicially determined without any presumption one way or the other. (2 Nichols, *ibid.,* § 7.4 [2].) We think that full effect can be given to the legislative intent manifested in the committee report and in the statement in section 6 of the act by clothing the uses covered by prior legislative declarations with the presumption that they are public and withholding such presumption from any other and additional purposes.

In this case, the circuit court did not have to rely on any presumption in deciding that the proposed taking is for a public use. The record amply supports the decision. Rehabilitation of the blind and visually handicapped persons has been a recognized activity of the Territorial government since the establishment of the Bureau of Sight Conservation and Work with the Blind by Act 113 of the

Session Laws of 1945. There apparently is no precedent holding that the use of land in connection with such activity is a public use. But novelty is no deterrent to the proper exercise of judicial function. The concept of public use is not static. We are in accord with the following statement in *Laret Investment Co.* v. *Dickmann*, 345 Mo. 449, 455, 134 S.W. [2d] 65, 68: "To be guided solely by whether a given activity had, at some previous time, been recognized as a public purpose would make the law static. Such a standard would compel us to retain in the law, as appropriate for public expenditure, activities which have ceased to be of public concern; and would prevent us from adopting new public functions regardless of how essential to the public welfare they may have become by reason of changed conditions."

Implicit in the constitutional and statutory provision that private property may be taken for public use is the requirement that the taking shall be necessary for such use. But the question of necessity, in the absence of constitutional or statutory provision to the contrary, is legislative, subject only to judicial review for fraud, bad faith or abuse of discretion. In *Sears* v. *Akron*, 246 U.S. 242, 251, the Supreme Court of the United States stated: "It is well settled that while the question whether the purpose of a taking is a public one is judicial, *Hairston* v. *Danville & Western Ry. Co.*, 208 U.S. 598; the necessity and the proper extent of a taking is a legislative question. *Shoemaker* v. *United States*, 147 U.S. 282, 298; *United States* v. *Gettysburg Electric Ry. Co.*, 160 U.S. 668, 685; *United States* v. *Chandler-Dunbar Water Power Co.*, 229 U.S. 53, 65."

In this Territory, R.L.H. 1945, § 302, originally provided that "No property shall be taken * * * unless it shall appear that it is to be put to some public use, and that the taking is necessary to such use." The provision that the taking shall be necessary for public use was eliminated by Act 12 of the Session Laws of 1951. There is no decision of this court construing the original provision, although it might well have had the effect of making the question of necessity a judicial one. (1 Nichols, *ibid.*, § 4.11[4].) The elimination of the provision clears any doubt on this score.

We think that the effect of Act 12 on the question of necessity is to place the law in this jurisdiction clearly in accord with the overwhelming weight of authority that it is legislative. Under such prevailing rule, where the legislature itself exercises the power of eminent domain, its determination as to the necessity of a taking is conclusive, as long as it has acted reasonably and in good faith. (1 Nichols, *ibid.*, § 4.11 [3]; 18 Am. Jur., *Eminent Domain*, § 105; 29 C.J.S., *Eminent Domain*, § 88.) Where there has been a delegation, the grantee of the authority stands in the position of the legislature and his action within the scope of the delegation has the same efficacy as the action of the legislature. (1 Nichols, *ibid.*, § 3.21[2]; 18 Am. Jur., *Eminent Domain*, § 106; 29 C.J.S., *Eminent Domain*, § 89.)

Appellants state: "The question of public necessity is primarily a legislative question, but here the legislature has not determined that it is necessary to condemn, nor has it even been shown that the legislature contemplated condemnation, for a blind center."

True, the legislature itself did not determine the necessity for the taking. The evidence is that the superintendent of public works made the determination. The legislature has not given the superintendent express authority to make the determination, but we think that the authority is necessarily implied in the provision of R.L.H. 1955, § 8-12, that the attorney general may institute a condemnation proceeding at the request of the head of a department.

The rehabilitation center is presently located on Territorial land on Beretania Street in Honolulu. Appellants say that the evidence "falls far short of depriving the present blind center of the use of these lands and there was no particular showing why the blind center could not have a building erected on its present site or on other lands already belonging to the Territory." The matter of selection of a site for a public undertaking comes under the general rule, and is subject to judicial inquiry only where fraud, bad faith or abuse of discretion is involved. There is an abundance of evidence that the superintendent selected the site in good faith. The Territorial legislature has made an appropriation for a rehabilita-

tion center for blind and physically handicapped persons, which appropriation includes "necessary plans and acquisition of land" and is to be expended by the superintendent. (S.L.H. 1955, Act 273.) The proposed site is in proximity to the Children's Hospital and the Rehabilitation Center of Hawaii (a private institution). It is contemplated that the proposed center will carry on its activities in cooperation with those institutions.

The circuit court did not err in holding that the superintendent did not abuse his discretion in deciding that the proposed taking is necessary.

Affirmed.

*J. Garner Anthony* (*Robertson, Castle & Anthony* and *Arthur B. Reinwald* with him on the briefs) for Mollie P. Lalakea, Solomon K. Lalakea and Thomas K. Lalakea, defendants-appellants.

*Walter T. Shimoda,* Deputy Attorney General (*Jack H. Mizuha,* Attorney General, with him on the brief), for plaintiff-appellee.