STATE OF HAWAII, BY SHIRO KASHIWA, ITS ATTORNEY GENERAL *v.* MARILYN BRADSHAW CHANG, RICHARD KIM CHEONG CHANG AND HERMAN VALDEMAR VON HOLT, TRUSTEE UNDER THE WILL AND OF THE ESTATE OF JOHN C. CLUNEY, DECEASED.

No. 4303.

February 4, 1963.

Tsukiyama, C.J., Cassidy, Wirtz, Lewis and Mizuha, JJ.

OPINION OF THE COURT BY MIZUHA, J.

This is an appeal under R.L.H. 1955, § 8-32, from an interlocutory judgment in an eminent domain proceeding in which the lower court held that the taking of the prop-

erty sought to be condemned is necessary for public use within the meaning of chapter 8 of the Revised Laws of Hawaii 1955.

Appellants contend that there has been no determination that the land is needed for public use and that the appellee has failed to meet the requirements of the Appropriation Act, Act 195, Session Laws of Hawaii 1961. The statutory provisions that govern in this eminent domain proceeding are compiled in chapter 8 of the Revised Laws of Hawaii 1955.

Section 8-32 provides that "if the defendant in his answer * * * denies that the use for which the property sought to be condemned is a public use, * * * the issue may, upon the motion of any party, be set for immediate trial, without a jury and without regard to position on the calendar. An interlocutory appeal shall lie from the decision on such issue * * *."

This proceeding was instituted by the Attorney General at the request of the Comptroller, Department of Accounting and General Services.[1]

The petition contains the allegation "that the public purpose and use for which lands are. sought to be condemned is for the Honolulu Civic Center, Honolulu, Hawaii, as authorized under Act 195, Section 1, Item B. X. 6, Session Laws of Hawaii 1961."

The determination of public use and necessity is found in the Appropriation Act, *supra,* and though the making of such determination may be delegated, the instant case is one of determination by the legislature itself. 1 Nichols,

[1] The Reorganization Act, Act 1, Section 12, Second Special Session Laws 1959, Section 14A-11 Revised Laws of Hawaii 1955 Supplement transferred to the Department of Accounting and General Services among other things, "the non-highway functions of the Department of Public Works as heretofore constituted" and requires the Department of Accounting and General Services to "undertake the program of centralized engineering services, including operation and maintenance of public buildings, for departments of the State."

*The Law of Eminent Domain,* § 4.11 (3) (3d ed.) ; 18 Am. Jur., *Eminent Domain,* § 105; 29 C.J.S., *Eminent Domain,* § 88; *Territory* v. *Aona,* 43 Haw. 253, 259. Such legislative determination appears in the following language of the Act:

"SECTION 1. The following sums, or so much thereof as shall be sufficient to accomplish the purpose designated by the appropriations, are hereby appropriated, to be undertaken by the agencies hereinafter designated, for the annual period ending June 30, 1962 * * *.

\*  \*  \*  \*  \*  \*  \*  \*  \*

B.  PROJECTS LOCATED IN THE CITY AND COUNTY OF HONOLULU

\*  \*  \*  \*  \*  \*  \*  \*  \*

X.  GENERAL GOVERNMENT
(To be expended by the Department of Accounting and General Services.)

\*  \*  \*  \*  \*  \*  \*  \*  \*

6. Land Acquisition, Honolulu Civic
   Center ----------------------------------------$1,000,000"

Webster's Third New International Dictionary, Unabridged (1961) defines civic center as follows: "a section of a city or town usually near the center where administration buildings, courts, libraries, galleries, and other public buildings are grouped."

The term "Honolulu Civic Center" was first used by the Planning Commission of the City and County of Honolulu on February 23, 1945 when it designated a certain portion of the City in its Master Plan for the Honolulu Civic Center. In Act 220, Session Laws of Hawaii 1959, our State Legislature referred to the "Honolulu Civic Center" as adopted by the Planning Commission of the City and County of Honolulu in its Master Plan, and designated a portion of the land area within the "Hono-

lulu Civic Center" as the capitol site for the State of Hawaii. It is clear that our State Legislature found the necessity for acquiring additional land for public use within the "Honolulu Civic Center" although it did not specify, in *totidem verbis,* the particular use of said land, which might consist of buildings, parking areas, or other public uses.

Appellants contend that this general determination to acquire land by the State Legislature in the Civic Center complex is insufficient. When the legislature itself exercises the power of eminent domain, its determination as to the necessity of a taking is conclusive, as long as it has acted reasonably and in good faith. 1 Nichols, *The Law of Eminent Domain,* § 4.11(3) ; 18 Am. Jur., *Eminent Domain,* § 105; 29 C.J.S., *Eminent Domain,* § 88; *Territory* v. *Aona,* 43 Haw. 253, 259. "The necessity for appropriating private property for public use is not a judicial question. This power resides in the legislature, and may either be exercised by the legislature or delegated by it to public officers." *Rindge Co.* v. *Los Angeles County,* 262 U.S. 700, 709, 43 S. Ct. 689, 693, 67 L. Ed. 1186, 1193. "Where there has been a delegation, the grantee of authority stands in the position of the legislature and his action within the scope of the delegation has the same efficacy as the action of the legislature." 1 Nichols, *ibid.,* § 3.21(2) ; 18 Am. Jur., *Eminent Domain,* § 106; 29 C.J.S., *Eminent Domain,* § 89; *Territory* v. *Aona,* 43 Haw. 253, 259. An Agency vested with the right of eminent domain has the power and the discretion to use it for the designated purposes, and the quantity which should be taken, its location, and the time of the taking are legislative and not judicial questions. *Bragg* v. *Weaver,* 251 U.S. 57, 40 S. Ct. 62, 64 L. Ed. 135; *United States* v. *Gettysburg Elec. Ry.,* 160 U.S. 668, 16 S. Ct. 427, 40 L. Ed. 576; *Rindge Co.* v. *Los Angeles County, supra.*

There is no evidence of fraud, bad faith or abuse of discretion on the part of the Comptroller in the selection of 31,683 sq. ft. of land in the "Honolulu Civic Center" directly across from the capitol site. The Comptroller's determination that the land sought to be taken within the "Honolulu Civic Center"[2] may be used initially for a parking area[3] and subsequently for a State office building when

---

[2] Direct examination of State Comptroller:

"Q * * * Now, Mr. Miyake, the subject land is being taken for the Honolulu Civic Center, is that correct?

"WITNESS: That is correct.

"Q (By Mr. Lee) Now, does the term, 'Honolulu Civic Center', have any particular meaning?

"A Yes, the term, 'Civic Center', means that whole complex of State office buildings which would house the functions of the State government in all its facilities, including parking areas and for the legislative, executive, and the staff functions and the operating agencies, as well. And this is in line with the theory that in order to attain good government or to have an efficient functioning government, it would be better to have all functions of the State government located in one vicinity or in close proximity to the executive of the State.

"Q Now, the subject land is across the street from the Honolulu Hale, which is the center of the City and County government of Honolulu, is that correct?

"A That is correct.

"Q And the subject land will be across the street from the Capitol Building, is that correct?

"A Yes."

[3] Cross-examination of State Comptroller:

"Q Do you have any plan whatsoever for the use of this property?

"A Right at the present time, our only plans are in the discussion stage or the development stage. In other words, I cannot say that we have definite plans for the use of this parcel of land except for the further development of this site as a part of the Civic Center.

"Q So you can't tell the Court today whether this land will ever be used by the State within the next five or ten years?

"A At this stage, I can say that if or should the legislature appropriate sufficient money for the State Office Building, which we have included in this budget for this coming session, then we may proceed—proceed to develop this parcel of land for our State Office Building.

"Q Well, you have no present plan of putting an office building on the land that is sought to be condemned, have you?

"A No plans in detail because we don't have the funds to develop the plans in detail.

* * * * * * * * *

"Q (By Mr. Anthony) Well, at this very moment, you have no idea what use, if any, the State will put this land to within the next ten years.

"A Oh, on the contrary, Mr. Anthony. I would say that in the event that we do succeed in condemning this property, we can always use that

funds are available, is in accord with constitutional and statutory requirements. Chapter 8, Revised Laws of Hawaii 1955; *Territory* v. *Aona, supra.*

These cases called to our attention by appellants are not applicable to this eminent domain proceeding. We do not find here the taking of private property in excess of that needed for a contemplated purpose as in *Cincinnati* v. *Vester,* 33 F.2d 242 (6th Cir. 1929) *aff'd, Cincinnati* v. *Vester,* 281 U.S. 439, 74 L. Ed. 950, 50 S. Ct. 360; nor is it a condemnation for a probable need at some remote, indefinite or speculative future time as in *State* v. *0.62033 Acres,* 49 Del. 90, 110 A.2d 1; *Grand Rapids Bd. of Educ.* v. *Baczewski,* 340 Mich. 265, 65 N.W.2d 810; *State* v. *City of Euclid,* 164 Ohio St. 265, 130 N.E.2d 336; *Port of Everett* v. *Everett Improvement Co.,* 124 Wash. 486, 214 Pac. 1064; nor is it a case of a clear abuse of discretion as noted in *Winger* v. *Aires,* 371 Pa. 242, 89 A.2d 521, where the school board endeavored to condemn 55 acres of land for an elementary school building to satisfy a future increase of 65 pupils.

Appellants argue that when the condemnation was filed the Comptroller had no plan for a State office building, as brought out by his deposition. We are satisfied with his explanation of the circumstances.[4] At the time

---

property for additional parking area, parking space, within the Civic Center for State vehicles, as well as for the State employees.

"Q And was that part of your determination? You thought you might use this as a parking lot?

"A That would be only an interim use until such time as further development can be programmed for this particular piece of property."

[4] "Q Do you remember being asked the question whether you had any plans for the use of this land?

"A Yes, I recall that.

"Q You remember what your answer was?

"A We had no definite plans.

"Q And it was only in the discussion stage?

"A That is correct.

"Q That is true—today?

"A Not now. Not now. We have developed a certain concept for the possible use.

of filing the condemnation he was pursuing a general plan.[5] His testimony as to the State office building was consistent with this general plan. See *Carlor Co.* v. *City of Miami*, 62 So. 2d 897 (Fla. 1953), *cert. denied,* 346 U.S. 821, 74 S. Ct. 37, 98 L. Ed. 347; *State Road Dept. of Florida* v. *Southland, Inc.*, 117 So. 2d 512 (Fla. 1960); *Chew* v. *City of Philadelphia,* 257 Pa. 589, 101 Atl. 915; *City of Waukegan* v. *Stanczak,* 6 Ill. 2d 594, 129 N.E.2d 751.

Since our opinion rests on the basis of a determination of public use and necessity made by the legislature under the terms of Act 195, Session Laws of Hawaii 1961, we will consider whether there was compliance with the following conditions enumerated in sections 9 and 11 of the act which read as follows:

"SECTION 9. The Governor, upon recommendation of the Director of State Planning and the Director of the Department of Budget and Review, shall determine when the authorized projects shall be initiated taking into consideration the factors of public need, general financial condition of the state general

---

"Q Well, what happened between December 11th and January 4th that changed the situation?

"A Well, at that time, the budget was being developed by our Public Works Division, and in that budget they have developed the concept of the State Office Building.

"Q On this land?

"A Possibly, yes.

"Q Who did that?

"A The Engineers and the Public Works Division and the Department of Accounting and General Services, as well as in conjunction with the Planning and Research people."

[5] "A Well, actually, it's the Architects Advisory Committee's recommendation. for one thing, to acquire this parcel for the—as an adjunct to the development of the Capitol site; and, also, the recommendations of the Public Works Division would be—and the engineers—would be to the effect that this parcel of land is necessary for the development of the Honolulu Civic Center complex.

"Q What does that word mean—'complex'?

"A Well, the complex would include the various functions and buildings and the parking areas and the facilities of all the State Government."

fund and bond fund, and the general economic conditions. The Governor shall have authority to defer projects for reconsideration by the ensuing legislature whenever it is determined (1) that the amount appropriated is insufficient to accomplish the purpose for which the appropriation is made, and (2) that the fiscal condition does not warrant expenditure of the appropriated funds. Such deferment shall be reported to the next legislature at least 20 days prior to its convening and shall be accompanied with the reason or reasons therefor."

"SECTION 11. The purchase of land and the construction of buildings shall be subject to the approval of the Governor upon recommendation of the Director of State Planning as to what lands should be utilized or purchased, and as to type, size, arrangement, use and exterior architectural design of the authorized structure."

We are satisfied that these conditions were adequately complied with. Appellants, however, claim that the Comptroller had no authority to proceed in the absence of the Governor's approval.

The Administrative Director, a constitutional officer,[6] testified that the matter was the subject of discussion between himself and the Governor. "I have talked to the Governor many times about this in our whole activity of the capitol program." He further testified that he had a "specific understanding of what the Governor's wishes are." The Governor had knowledge of the contemplated

---

6 Article IV, sec. 5, Constitution of the State of Hawaii. "The governor shall appoint an administrative director to serve at his pleasure." As shown by the debate, the object was to give the Governor help in supervising the departments. Proceedings of the Constitutional Convention, Vol. II, p. 346. The Administrative Director testified that his primary work was to coordinate the activities of the staff agencies of the government, and to coordinate the activities of that group with the group of line agencies.

condemnation proceedings, he testified, and "wanted these proceedings to go ahead" and did not have any objections to the acquisition of this parcel of land in the "Honolulu Civic Center." The absence of any objections on the part of the Governor, who was consulted and had full knowledge of the decision of the Comptroller to institute condemnation proceedings, was tantamount to an approval by him of the action of his Comptroller. This is fully borne out by the subsequent action of the Governor in the written approval of the "allotment advice"[7] which was the formal approval by him of the expenditure of funds for the instant condemnation.[8]

The Comptroller's testimony further supports the conclusion that the condemnation proceeding was filed pursuant to the legislative determination of public use and necessity and that it was the function of his department to carry out such determination as manifested by the appropriation aforesaid for the acquisition of land in the "Honolulu Civic Center." He testified that during

---

[7] Cross-examination of Michael Miyake, State Comptroller by Mr. Anthony:

"Q   * * * what do you mean by the 'allotment advice'?

"A   Yes, I am getting to that. At the time when the money is appropriated, the money is not available to be spent at that point; it must be allotted and made available for use before you can actually expend the money. And this allotment advice authorizes the expenditure of the funds under the appropriation and that is called the allotment advice or the approval of the government to go ahead and spend the money.

"Q   Is that a written document?

"A   Yes, it is a written document.

"Q   And that was signed by the director—?

"A   Yes.

"Q   —the Planning director?

"A   Yes, sir.

"Q   When was that signed?

"A   That was signed sometime in September.

"Q   Of what year?

"A   '61."

[8] The petition for condemnation was filed on July 31, 1961. The "allotment advice" was signed by the Governor sometime in September 1961. "Motion for possession of Land Under Condemnation" was filed on October 5, 1961. Hearing on the issue of public use was held on January 3, and February 9, 1962.

the 1961 legislative session, representatives of his office, at the hearings before the legislature with reference to the Department of Accounting and General Services' request for funds to acquire land in the "Honolulu Civic Center," specifically pointed out to the legislature the particular land sought in this condemnation proceeding, together with another parcel of land and improvements (Universal Building), as being the lands which had been selected by the Executive Branch of the government for the use of the State in the "Civic Center" complex.

Judgment affirmed.

*J. Garner Anthony* (*Robertson, Castle & Anthony*) and *Robert H. K. Chang* for Marilyn Bradshaw Chang and Richard K. C. Chang, defendants-appellants.

*Charles M. Hite* for Herman Valdemar Von Holt, Trustee of Estate of Cluney, defendant-appellant.

*Shiro Kashiwa,* Attorney General and *Andrew S. O. Lee,* Deputy Attorney General for plaintiff-appellee.

YUKIE SANDRA SCOTT *v.* DANIEL S. C. LIU, INDI-
VIDUALLY AND AS CHIEF OF POLICE OF THE
CITY AND COUNTY OF HONOLULU, JOHN
DIXON, MICHAEL H. S. CHUN, THOMAS J.
CARLOS, HOLAIKU L. DRAKE AND ABRAHAM
AIONA.

No. 4316.

FEBRUARY 13, 1963.

TSUKIYAMA, C.J., CASSIDY, WIRTZ, LEWIS
AND MIZUHA, JJ.

*Per Curiam.* On December 19, 1962 appellants filed a
petition for rehearing, asserting in various forms that the
court did not give sufficient consideration to the under-
standing of the trial judge as to the finality of the order of
December 29, 1961, denying the motion for new trial. On
December 22, 1962 we requested a reply under our Rule
5(b).[1] The court was unanimous in this request and in the
admonition contained therein "that this directive is not to
be taken as any indication that the Court considers that
the petition for rehearing properly, either in form or sub-
stance, presents grounds for relief under Hawaii Rules of
Civil Procedure, Rule 60(b), or that by it the application
for such relief is made in the proper forum."

Careful consideration has been given to the petition
and supporting memoranda, and to the reply filed January
29, 1962. We find the petition insufficient to support a
grant of rehearing.

---

[1] By inadvertence, counsel for petitioner Daniel S. C. Liu did not
receive notice thereof until December 27, 1962.

Assuming for present purposes that petitioners are correct in their contention that reconsideration of the motion for new trial was implicit in the action of the court on January 17, 1962 in taking under advisement the matter of writing an opinion,[2] and assuming further that the court intended to delay the finality of the order entered December 29, 1961 denying a new trial, and could do so without violation of H.R.C.P., Rule 6(b) by reinstating the motion for new trial while further considering said motion,[3] the point remains that no entry to that effect was made on the record,[4] nor was there any entry of the court's action on the motion of January 5, 1962 (which sought to set aside the order entered December 29, 1961) until March 19, 1962, at which point the time for appeal already had run. *Cf., Deena Products Co. v. United Brick & Clay Workers of America,* 195 F.2d 612 (6th Cir.). So there was nothing entered to which a liberal construction could be accorded to save appellants' rights. *Cf., Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc.,* 371 U.S. ——, 83 S.Ct. 283, 9 L. Ed. 2d 261; *Yanow v. Weyerhaeuser S.S. Co.,* 274 F.2d 274, 282 (9th Cir.). Petitioners fail to meet the point stated in the last headnote of the opinion herein.

The December 29, 1961 order was not ambiguous or open to construction. It read:

---

[2] Petitioner Daniel S. C. Liu asserts that on January 17, 1962 "the trial court again announced that it intended to write a decision 'promptly.'" This assertion is not supported by the record. The pertinent portion of the minutes of January 17, 1962 was set forth in our opinion. No transcript of the hearing of that date has been furnished.

[3] We have made no holding on this point. In support of it, *Kelly v. Pennsylvania R.R.,* 228 F.2d 727 (3d Cir.), was cited upon the argument of the motion to dismiss the appeal and again is cited. In our opinion we distinguished *Kelly* by reason of the nature of the matter before the court on January 17, 1962, as shown by the motion of January 5, 1962 and the minutes of January 17, 1962. However, as will appear, we do not rest the denial of the petition for rehearing on the distinction so made.

[4] See *State v. Bulgo,* 45 Haw. 501, 503, 370 P.2d 480, 482; *State ex rel. M. J. Gorzik Corp. v. Mosman,* 315 S.W.2d 209 (Mo.); *McDowell v. Dye,* 193 Va. 390, 69 S.E.2d 459; *Losee v. Dolan,* 74 N.Y. Supp. 685.

"Good cause appearing, IT IS HEREBY OR-
DERED THAT the motions for new trial heretofore
filed herein are hereby denied."

Thus the order of December 29, 1961 beyond question was
an order "denying a motion for a new trial under Rule
59," and the time for appeal commenced to run under the
plain provisions of H.R.C.P., Rule 73(a). The cases cited
by petitioners[5] are not in point.

It further is argued that Rule 73(a) is not as restric-
tive as we find it to be. Except for the point reserved in
note 3, *supra*, this argument does not merit consideration.
The basic error therein is the assumption that the order
of December 29, 1961 denying new trial in itself was ap-
pealable apart from the judgment of August 30, 1961.
That assumption is unfounded. See *Stafford* v. *Dickison*,
46 Haw. 52, 57, 374 P.2d 665, 668; 6 Moore, *Federal Prac-
tice*, § 59.15(1) at 3892 (2d ed.).

Petitioners urge, in the alternative, that this court re-
mand the cause to the circuit court "with leave to appel-
lants to apply for relief under H.R.C.P., Rule 60(b)."
Such a provision in the remand would be inappropriate.
In *Kealoha* v. *Tanaka*, 42 Haw. 630, this court had a timely
appeal before it, but in this case on the present record we
do not. Upon dismissal of the appeal the circuit court will
have jurisdiction to consider any motion that may be made
under Rule 60(b).

*Stanley Ling,* Corporation Counsel, and *Lincoln J. Ishida,* Deputy Corporation Counsel, for petitioners.

*J. Garner Anthony (Robertson, Castle & Anthony)* for petitioner Daniel S. C. Liu.