HAWAII HOUSING AUTHORITY, A PUBLIC BODY AND A BODY CORPORATE AND POLITIC *v.* VIOLET K. RODRIGUES ET AL.

No. 4011.

ARGUED FEBRUARY 26, 1959.                    DECIDED MARCH 23, 1959.

RICE, C. J., STAINBACK AND MARUMOTO, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is a proceeding by the Hawaii Housing Authority to condemn for a housing-project site two parcels of land in Kalihi, Honolulu, owned by Wong Wai Kong and Yuk Moi Lum Kong, husband and wife. The two parcels are not adjacent to each other but are separated by land belonging to other people. A jury-waived trial was had in the circuit court of the first circuit and this appeal is from the amount awarded the land owners. The single question before this court is as to the method of valuation of the property.

The Hawaii Housing Authority had contemplated a development project which included a portion of the land owned by Mr.

Wong and his wife who were also planning a development of the two parcels. There was considerable delay in the proceeding and much correspondence was had between the attorneys for the Wongs and the Housing Authority with reference to whether the Wongs' land would be included within the proposed Housing Authority location. In October 1951 a letter was written to the Housing Authority by Mr. Fong, attorney for Wong, asking "that you release Mr. Wong's property from your proposed plan for a low-rent housing area." In November 1951 the Housing Authority answered the letter, stating the public Housing Authority had tentatively approved this site for 132 units of low-rent housing, had entered into a contract with appraisers for an appraisal of the property, and had retained a local architect to prepare plans and specifications, and further set out that the Authority intended to move as rapidly as possible to acquire the site of which Mr. Wong's land was a part. It also stated "It is our understanding that we have no control over the development or improvement of property by an individual owner until such time as the owner and the Authority have arrived at a negotiated sales price or condemnation proceedings have been initiated and any improvements made to the property up to that point would have to be acquired by the Authority at a price satisfactory to the owner arrived at through one of the two procedures above mentioned."

In the latter part of 1949 the owners had employed as their agent for the development of the two parcels a partnership termed Realty Company. This company, in the summer of 1951, employed an engineering firm of Park & Park to do work in connection with the proposed residential subdivision of the two parcels, and the firm of Fong, Miho & Choy was employed to render legal services in connection with such development, including the obtaining of approval of the subdivision by the city planning commission. In February 1952 the planning commission made a tentative approval of the subdivision, subject to construction of street improvements, utilities, etc. In the meantime, efforts by the Wongs to obtain rights of way for sewers, drainage, etc., over a portion of the land owned by the Housing Authority were unsuccessful. In September 1952 condemnation proceedings were instituted condemning all of one of the two parcels and part of the other parcel.

The condemner and the condemnees stipulated that the fair market value of these parcels on September 18, 1952, was $104,750, not considering the condemnees' expenses in connection with their proposed residential subdivision or their anticipated profit in the event this subdivision were completed and all of the lots sold at retail. The expenses of this abortive attempt to subdivide the parcels totalled $9,500 and 25 per cent of the anticipated "profit" was $10,888, to which they would have been entitled "if permitted to complete their subdivision and sell the lots" (at retail). The court, in finding the fair market value, added these two items to the stipulated fair market value. Appellant claims this was error.

The Fifth Amendment to the Constitution of the United States provides "nor shall private property be taken for public use, without just compensation."

"It is well settled that, when a parcel of land is taken for public use by the exercise of the power of eminent domain, the measure of compensation is the fair market value of the land." (4 Nichols, 3d ed., *Eminent Domain*, § 12.2, p. 27.)

"By fair market value is meant the amount of money which a purchaser willing but not obliged to buy the property would pay to an owner willing but not obliged to sell it, taking into consideration all uses to which the land was adapted and might in reason be applied." (Nichols, *supra*, § 12.2[1], p. 32, citing United States Supreme Court cases including, among others, *Olsen* v. *United States*, 292 U. S. 246, 78 L. Ed. 1236; *United States ex rel. T. V. A.* v. *Powelson*, 118 F. [2d] 70; *United States* v. *Certain Parcels of Land*, 144 F. [2d] 626, 155 A. L. R. 253; also cases from 22 States.)

Market value is not limited to the value for the use to which the land is actually devoted, but it may have a potential use value.

"* * * It is well settled that if land is so situated that it is actually available for building purposes, its value for such purposes may be considered, even if it is used as a farm or is covered with brush and boulders. The measure of compensation is not, however, the aggregate of the prices of the lots into which the tract could be best divided, since the expense of cleaning off

and improving the land, laying out streets, dividing it into lots, advertising and selling the same, and holding it and paying taxes and interest until all the lots are disposed of cannot be ignored and is too uncertain and conjectural to be computed. The measure of compensation is the market value of the land as a whole, taking into consideration its value for building purposes if that is its most available use." (4 Nichols, *Eminent Domain*, § 12.3142 [1], pp. 107-109.)

There are numerous cases supporting this rule.

In *State* v. *Deal*, 191 Ore. 661, 233 P. (2d) 242 (1951), evidence that property could be divided into a specified number of lots and the value of such lots when so divided was inadmissible on the issue of fair market value of the property, although evidence was admissible on the issue of the suitability of a tract for subdivision purposes, citing 2 Lewis, *Eminent Domain*, 3d ed., section 707, pages 1233 and 1236. The court also cited with approval 2 Nichols, *Eminent Domain*, 2d ed., section 445, page 1170.

Another case, *State* v. *Bailey*, 319 P. (2d) 906 (1957), stated:

"Though the circumstances showing adaptability may be shown, evidence that the property could be subdivided into certain number of lots of certain dimensions and separately valued as to sales prices would as a matter of law be speculative and inadmissible."

In *State* v. *Tedesco*, 4 Utah (2d) 248, 291 P. (2d) 1028 (1956), the court stated:

"The test is not what the lots will bring when and if 62 willing buyers come along, but what the tract, as a unit, and as is, platted or not, and in whatever state of completion, will bring from a willing buyer of the whole tract."

In *Kansas City & Topeka Ry. Co.* v. *Splitlog*, 25 Pac. 202 (1890), the court held that a witness may consider any use to which the ground may be presently put, the location of land and the effect its location has upon its value as a whole, but evidence as to how many lots it would make and what they would sell for

after the subdivision is wholly improper.

See also *Forest Preserve District of Cook County* v. *Wing,* 137 N. E. 139 (1922) and *Reiber* v. *Butler & P. R. Co.,* 50 Atl. 311 (1901).

Reversed.

*Joseph V. Hodgson (Richard K. Sharpless,* Attorney General, on opening brief; no reply brief) for appellant.

*Earl S. Robinson (Fong, Miho, Choy & Chuck* on the brief) for appellee.