STATE OF HAWAII *v.* MARILYN BRADSHAW CHANG, RICHARD KIN CHEONG CHANG and HERMAN VALDEMAR VON HOLT, Trustee Under the Will and of the Estate of John C. Cluney, Deceased.

No. 4586.

DECEMBER 29, 1967.

RICHARDSON, C.J., MIZUHA, MARUMOTO, ABE AND LEVINSON, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

The State of Hawaii, plaintiff-appellant, cross-appellee, condemned a vacant 31,683 square foot parcel of land owned by the defendants-appellees, cross-appellants on July 17, 1961. The parcel is located at the mauka-Waikiki (northeast) corner of Hotel and Punchbowl Streets. This court upheld a lower court determination that the condemnation was for a public purpose, *State v. Chang*, 46 Haw. 279, 378 P.2d 882.

Subsequently, the first trial to determine the fair market value of defendants' land began on August 1, 1965. The jury returned a verdict of $866,400. After entry of judgment on November 1, 1965, the trial court granted the State's motion for a new trial. The trial court denied the defendants' motion for an interlocutory appeal. The second trial began on February 14, 1966. The

jury returned a verdict of $772,000 and the judgment thereon was filed March 2, 1966. The State again moved for a new trial, but the trial court denied the motion. The State appealed from the judgment in the second trial, and the defendants cross-appealed from the granting of the State's motion for a new trial following the first trial.

The trial court erred in granting the State's motion for a new trial following the first trial. We remand the case for entry of judgment pursuant to the jury verdict in the first trial. It is unnecessary to consider the State's appeal from the judgment in the second trial. The following discussion refers only to the first trial.

The State called two expert witnesses, real estate appraisers Yoshio Hanao and John Hulten, to testify as to the fair market value of defendants' property. Both witnesses used the comparative method in determining the fair market value. They selected several properties which in their opinion were comparable and could be related to the defendants' land. These comparable properties had been leased or sold in the years preceding or following the condemnation or valuation date, July 17, 1961.

Mr. Hanao first subtracted from the actual prices of the lease of sale the estimated value of any buildings existing on the properties. Where property was leased rather than sold, the annual net income was capitalized at a certain percentage to find the value of the land. The State's witnesses made allowances for the differences between the defendants' land and the comparable properties in time, location, shape and size. Mr. Hanao arrived at the round figure of $17 per square foot. After deducting a certain amount in depreciation in value due to a utility easement, Mr. Hanao concluded that the fair market value was $536,300. Using the same method, Mr. Hulten concluded that the fair market value was $550,000.

Dr. Richard Chang, one of the owners of the condemned land, placed its value at $33.50 per square foot or $1,060,000 for the entire parcel. Mr. Y. T. Lum, defendants' expert witness and real estate appraiser, also used the comparative method starting with the prices of actual sales and leases of comparable properties.

He considered environmental and economic influences on the land market and specifically updated the value of his comparable properties to the valuation date.

Mr. Lum obtained a range of values from a low of $16 to $18 to a high of $40 to $50 per square foot for the comparable properties and then related the values to the defendants' land. His opinion of the fair market value of the defendants' land, taking into account the costs to prepare the land for its highest and best use as a multi-story medical or professional office building was $866,400. Mr. Lum testified that the defendants' expenditures for architect's, engineer's and attorney's fees and mortgage finance negotiations in preparing the land for use as a professional office building increased the value of the land by $66,400.

During its deliberations, the jury submitted to the trial court the following question in writing:

"The jury would like to clarify one point regarding the figures used by the State as comparison. Were the figures used prices paid at time of sale, or were they updated to July 17, 1961?"

After argument by counsel, the court answered:

"The figures on the State's map in evidence were prices paid at the time of the sale or lease and were not up-dated to July 17, 1961."

The jury returned a verdict of $866,400. The trial court granted the State's motion for a new trial on the grounds that the jury erred when it separately added the expenses for architect's, engineer's and attorney's fees and mortgage finance negotiations to the market value of the land; that its answer to the jury's question concerning the figures on the State's maps misled the jury and had a prejudicial effect on the State's case; that the verdict was excessive and not supported by the evidence; and that a new trial was necessary to prevent a miscarriage of justice. Defendants' specifications of error deny the validity of the order to grant a new trial based on the above grounds.

### 1. The Addition of Fees and Costs to the Market Value of the Defendants' Land.

The State relies on *Hawaii Housing Authority* v. *Rodrigues,* 43 Haw. 195, in support of its argument that the trial court erred in allowing evidence of the defendants' expenditures of costs and fees to prepare the land for a multi-story building. In *Rodrigues* the parties had stipulated the fair market value of the condemned land. To that value the trial court added the expenses incurred by the landowner in connection with a proposed residential subdivision of the land and the anticipated profits in the event the subdivision was completed. On appeal, we reversed on the ground that such items were too uncertain and conjectural to be considered.

The State contends in this case that the costs were itemized separately and then added to the fair market value. The State's reliance on *Rodrigues* is misplaced. In this case the expenditures were presented to show that there was an enhancement of the value of the land. Mr. Lum stated that the fees and costs were contributory to the fair market value. Because of such expenditures, the feasibility of constructing a multi-story building on the land was established and a buyer would no longer have had to wait for such a study to be made.

We find no support in the record for the State's contention that the jury separately determined the fair market value of the land and then added to it the feasibility study costs. Furthermore, we note that the trend of authority is to permit consideration of such costs in determining fair market value. See *Cade* v. *United States,* 213 F.2d 138 (4th Cir. 1954); *United States* v. *25.406 Acres of Land,* 172 F.2d 990 (2d Cir. 1949), Cert. denied, 337 U.S. 931; and *United States* v. *Wise,* 131 F.2d 851 (4th Cir. 1942).

### 2. Jury's Question to the Court.

The State introduced into evidence maps of the area in which the subject land was situated. The actual prices of the sales and leases of the comparable properties used by the State's witnesses in arriving at a determination of the fair market value of the land were written on the maps. The State intentionally chose to

show the actual prices, and not the adjusted figures its witnesses used in determining fair market value. Mr. Hulten at one point had attempted to place the adjusted figures on the map but the attorney for the State directed him to write in the actual prices.

The State contends that the answer to the jury's question misled the jury and that the trial court should have told the jury that the State's witnesses adjusted the actual prices listed on the maps in reaching their conclusions as to the fair market value. It is within a trial court's discretion to answer a request for information. *Bengston* v. *Estes*, 260 Wis. 595, 600, 51 N.W.2d 539, 541; *Personal Finance Co. of Prov.* v. *Nichols*, 71 R.I. 213, 217, 43 A.2d 315, 317; *R. B. Tyler Co.* v. *Southern Bell Tel. & Tel. Co.*, 347 S.W.2d 669, 670. In the instant case, the trial court's answer to the jury's question was clear, direct and proper. The record clearly shows and the State admits that the figures on the maps in evidence were prices paid at the times of the sales or leases of the comparable properties and were not adjusted to the valuation date of July 17, 1961. It was not necessary for the trial court to elaborate further. To do so would have been contradictory and could have confused the jury.

3. Evidence Supporting the Verdict and
   Excessive Verdict.

The State contends that the verdict of $866,400, which was Mr. Lum's opinion of the fair market value of the land, was not supported by the evidence. We disagree with the State's contention that Mr. Lum's method of updating the comparable properties was speculative and hearsay.

At some point in determining the value of land by the comparative method, the appraiser must relate the values of the comparable properties to the value of the condemned land. The State's witnesses used percentages to compensate for the differences between the comparable properties and defendants' land. As did the State's appraisers, Mr. Lum started with the actual sales and leases of his comparable properties. He then considered the environmental and economic influences, size, shape, location and time, and arrived at a range of values for the comparable properties. He then related these values to the condemned land.

The difference between the opinions of the State's witnesses and Mr. Lum lay in the appraisal technique rather than evidence admissibility. Each party was permitted to develop fully its testimony. *City and County* v. *Bishop Trust Co.*, 48 Haw. 444, 469, 404 P.2d 373, 388. The State was not prejudiced either substantively or procedurally and in all respects was accorded a fair trial.

The State contends that because in the opinion of its witnesses the fair market value of the land was $536,300 and $550,000, the jury's verdict of $866,400 was excessive. In effect, the State concludes that the jury should have taken the opinion of its witnesses rather than the defendants'. This court previously has recognized in *Territory* v. *Adelmeyer*, 45 Haw. 144, 363 P.2d 979 that:

> "Experts' opinions vary and the competence, credibility and weight of their testimony is exclusively the province of the jury * * *. Neither the trial nor appellate court can substitute its judgment for that of the jury in awarding just compensation in eminent domain proceedings, but the verdict must stand unless it is claimed that it is so excessive as to have been brought about by passion or prejudice, or is so excessive as to be shocking to the enlightened conscience * * *.
>
> "The question is not what we might have decided had we been in the jury box. The question is simply whether there was substantial evidence to sustain the jury verdict. We find that there was. We are not expected to usurp the functions of a jury."

Upon review of the record we do not find that a new trial was necessary to prevent a miscarriage of justice.

The State's appeal is dismissed and the judgment in the second trial filed March 2, 1966 is vacated. The judgment in the first trial filed November 1, 1965 is reinstated.

*Andrew S. O. Lee*, Deputy Attorney General, (*Bert T. Kobayashi*, Attorney General, with him on the briefs) for plaintiff-appellant, cross-appellee.

*Frank D. Padgett*, (*Padgett & Greeley* of counsel), for defendants-appellees, cross-appellants.