CITY AND COUNTY OF HONOLULU, a municipal corporation, Plaintiff-Appellant, Cross Appellee, *v.* BONDED INVESTMENT COMPANY, LTD.; MOKULEIA RANCH AND LAND COMPANY, LIMITED; ANTONIO RUIS SALCEDO; SATORU IINUMA, Defendants, and LEROY ROBERT ALLEN and HIROKO ALLEN, Defendants-Appellees, Cross Appellants

No. 5243

March 12, 1973

Abe, Acting C.J., Levinson and Kobayashi, JJ., and Circuit Judge Menor in Place of Richardson, C.J., Disqualified, and Circuit Judge Lanham in Place of Marumoto, J., Disqualified

OPINION OF THE COURT BY KOBAYASHI, J.

On May 23, 1969, pursuant to the eminent domain provisions of HRS § 101, the City and County of Honolulu (City), filed condemnation proceedings to acquire two contiguous parcels of beach front land located between Farrington Highway and the ocean at Waianae, Oahu.

The subject properties are part of lands purchased by Bonded Investment Company, Ltd., from Mokuleia Ranch and Land Company, Ltd. The properties consist of two parcels: parcel 63 with an area of 73,616 square feet and parcel 64 with an area of 48,115 square feet, respectively, as shown on Maps 4 and 5 of Land Court Application 1827 for the Maili Beach Park Extension. Bonded Investment sold the properties to Antonio Ruis Salcedo and Satoru Iinuma by agreement of sale. Parcel 63 was subsequently sold by sub-agreement of sale to Leroy Robert Allen and Hiroko Allen, the condemnees and cross-appellants in this proceeding. An option to purchase parcel 64 was also acquired by the condemnees from Salcedo and was exercised in October of 1968.

After securing the above rights to the subject properties the cross-appellants proceeded to take steps necessary to develop and market a 72-unit, nine-story beach front condominium on parcel 63 called the Maili Beach House, and a 56-unit, 14-story beach front condominium on parcel 64 called the Maili Beach Tower.

On the date of summons cross-appellants had already obtained a feasibility and study appraisal for financing purposes, working drawings for improvements, satisfactory financial arrangements for the proposed construction and all necessary legal documentation to establish a Horizontal Property Regime for the Maili Beach House on parcel 63. Upon issuance of the final report from the Real Estate Commission all units were sold and placed in escrow, a firm construction contract was made, and a building permit was acquired. All necessary steps were accomplished save the construction of the improvements. Similar steps were being taken to develop the Maili Beach Tower although no sales had been made.

On March 17, 1970, the City deposited $230,900 with the clerk of the court. On April 10, 1970, the City deposited $232,000, representing the estimated just compensation and damages to be paid for the acquisition of parcel 64. The parties stipulated for a withdrawal of $232,000 and immediate possession of parcel 64 by the City.

On May 1, 1970, a stipulation for the withdrawal of the $230,900 was entered into, said amount representing a partial deposit on account of the City's estimate of just compensation and damages for parcel 63.

On August 7, 1970, the City deposited the additional sum of $377,100 on account of parcel 63. On August 25, 1970, the parties stipulated for the withdrawal of the $377,100 and immediate possession of parcel 63 by the City.

After trial, the jury awarded the condemnees $491,981.28 for parcel 63 and $250,010.50 for parcel 64.

Subsequent to the verdict, the trial court held hearings on June 29 and 30, 1971, because of dispute as to the verdict entered. The trial court entered its judgment on the hearings on August 18, 1971, and entered its Findings of Fact and Conclusions of Law on the matter of blight of summons damages. The court held that, inasmuch as the verdict of $491,981.28 for parcel 63 was less than the City's estimated deposit of $608,000, the condemnees could retain the $608,000, and disregarded the jury's verdict.

The following points of appeal merit our consideration. Condemnees claim that the trial court erred:

1. in limiting the use of evidence of profits in determining just compensation;

2. in refusing to strike the testimony of John Lockhart;

3. in refusing the testimony of Ray Hambleton and John Hulten; and

4. in instructing the jury as to the use of evidence of profits.

The City also appeals, alleging that the trial court erred:

1. in allowing the condemnees to retain the excess deposit on parcel 63 as the City's estimate of just compensation;

2. in not setting off the excess deposit on parcel 63 against the deposit deficiency on parcel 64;

3. in determining the proper interest rate to be used to compute blight of summons damages; and

4. in disregarding the day of deposit when calculating the period for blight of summons damage.

## THE CONDEMNEES' APPEAL

*Profits*

Cross-appellants allege that the trial court erred in limiting the use of evidence of profits in determining just compensation for the parcels taken. In fact, evidence of profits was allowed by the trial court with respect to parcel 63. Condemnees failed to allege where the trial court specifically limited the use of evidence of profits with regard to parcel 63. In dispute is the admissibility of such evidence of profits with regard to parcel 64.

In *Hawaii Housing Authority* v. *Rodrigues,* 43 Haw. 195 (1959), this court held that it was error to allow expenses incurred by the landowner in connection with a proposed residential subdivision of land and anticipated profit in the event the subdivision was completed, as part of just compensation. Later, in *State* v. *Chang,* 50 Haw. 195, 436 P.2d 3 (1967), this court discussed *Rodrigues,* stating that the expenses incurred and anticipated profits were too uncertain and conjectural to be considered. *Rodrigues* was then modified when we held that expenditures made toward the development of the land were admissible to show enhancement of the value of land in determining fair market value. We did not hold, as condemnees allege, that such expenses were per se recoverable as part of just compensation. We made no similar modification with regard to anticipated profits.

We are of the opinion that the expected profits on parcel 63 were not speculative. Condemnees had already procured all necessary financing, drawn up plans for the proposed construction, dedicated the property to a Horizontal Property Regime, entered into contracts to sell all the units, and entered into a firm construction contract to build the improvements. Furthermore, all sales and proceeds of sale were in escrow awaiting construction of the Maile Beach House. Condemnees' right to receipt of profits had become legally enforcible and would have come to fruition but for the condemnation

proceedings. The conjecture, uncertainty and speculation, inherent in anticipated profits of an incomplete project as in parcel 64, are not present with regard to parcel 63 and consequently evidence of such profits was properly received.

Though substantial preparation for the sale of parcel 64 had been made, no contracts of sale for the units were made. Thus, profits here could clearly be classed as speculative. Condemnees allege that evidence of profits may be admissible to show enhancement of the value of the land. We disagree. It is the opinion of this court that though evidence of expenses incurred for the development of the land may be admissible to show enhancement of the value of the land, anticipated profits as in parcel 64 are too uncertain and speculative to be used to show enhancement of land value. The trial court correctly ruled out anticipated but speculative profits with regard to parcel 64. *State* v. *Chang, supra* and *Hawaii Housing Authority* v. *Rodrigues, supra.*

*Expert Testimony.*

Condemnees next allege that the trial court abused its discretion in refusing to admit the testimony of Michael Ross and Harry Otsugi, both claimed experts in the area of condominium development, to prove the non-existence of a market for the parcels in question. In essence the court held them unqualified to testify. The condemnees have failed to show clearly an abuse of discretion on the part of the trial court for such refusal. *Territory* v. *Adelmeyer,* 45 Haw. 144, 363 P.2d 979 (1961).

Condemnees also allege that the trial court erred in refusing to strike the testimony of John Lockhart, the City's expert appraiser, on the basis that his testimony provided an appraisal of the raw land only. The fact that an expert witness omits consideration of one element of many in arriving at his opinion as to value, goes to the

weight of his testimony rather than to the admissibility of his opinion. *Territory* v. *Adelmeyer, supra.* Thus the trial court correctly refused condemnees' motion to strike John Lockhart's entire testimony.

Condemnees next allege that the trial court erred in disallowing the condemnees from calling two expert appraisers, hired but not called upon to testify by the City, to testify on the subject of market value. We disagree. Expert appraisers, Ray W. Hambleton and John J. Hulten, had assisted in formulating the City's preparation for the instant case. They possessed no unique knowledge with regard to the instant case as would an eyewitness of an automobile accident. Condemnees were seeking expert testimony on the subject of fair market value favorable to them. This could be acquired by hiring their own expert appraisers. Further, there was no showing of good cause why the City's experts should have been called rather than any others. Condemnees have not shown the unavailability of other competent expert appraisers in this case. Therefore, as a matter of fairness, and in the absence of good cause, the trial court, in its discretion, correctly disallowed condemnees from using the City's expert appraisers.[1] *Ramacorti* v. *Boston Redevelopment Authority,* 341 Mass. 377, 170 N.E.2d 323 (1960); J. H. Friedenthal, *Discovery and Use of an Adverse Party's Expert Information,* 14 STAN. L. REV. 455, 482 (1962).

*Instructions*

Condemnees allege that the trial court erred in giving the City's proposed jury instructions Nos. 1, 5, 8 and 26 and in refusing to give the condemnees' proposed

[1] Though Lockhart relied on xeroxed portions of Hambleton's appraisal report, they merely indicated data regarding terms of comparable sales of similar lands. The trial court did not abuse its discretion in refusing to call Hambleton in this regard. City & County v. Bishop Trust Co., 48 Haw. 444, 404 P.2d 373 (1965).

jury instructions Nos. 4, 13, 14, 15, 21, 24, 25 and 26.

We are of the opinion that the instructions given to the jury relating to the proper consideration and recovery of profits with regard to the subject properties in this case were sufficiently misleading to the jury and prejudicial to the condemnees as to warrant a reversal and remand for a new trial.

The City's proposed instruction No. 5, given over the condemnees' objection, is as follows:

> An owner of property may not be awarded compensation for loss of profits apart from the market value of the land taken even though there might be a loss of profits since it is the real property and not the profits that is being taken. However, loss of profits may be considered as an element of market value.

No distinction was made in the above instruction between profits which were certain to be realized but for the condemnation proceedings and those profits which were speculative. The trial court should instruct the jury on the general principle of law applicable in this jurisdiction, as stated in this opinion, on what type of profits and expenses incurred by the condemnees can be properly considered as enhancing or depreciating the value of land.

The court further erred in refusing to instruct the jury with regard to the limited basis (value of raw land only) upon which the City's only expert appraiser founded his opinion as to fair market value. Though the trial court properly refused to strike the entire testimony of the City's appraiser, John Lockhart, it should have instructed the jury in this regard in order that they not be misled. However, the trial court properly denied condemnees' proposed instructions 24 and 25 for the following reasons: (1) the second sentence of proposed instruction 24 is a misstatement of the law, and (2) proposed instruction 25 amounts to an unreasonable com-

ment on Lockhart's testimony.[2]

Condemnees' other allegations of error in instructions are without merit.

## THE CITY'S APPEAL

*Excess Deposit*

We are of the opinion that the trial court erred in disregarding the jury's verdict and awarding to the condemnees the City's deposit of estimated just compensation and damages for parcel 63.

Though HRS § 101-31 provides for a deficiency judgment for the condemnee, in the event that the final award exceeds the estimate, HRS makes no provision to cover the situation where the verdict of the jury is less than the deposited estimate.

The United States Supreme Court, in *United States v. Miller,* 317 U.S. 369 (1943) , in construing the Federal Declaration of Taking Act, which also made no provision for return of excess deposit, concluded that a denial of restitution of the excess deposits would defeat the policy of the statute and work injustice. The court stated at 381-82:

> The purpose of the statute is two-fold. First, to give the Government immediate possession of the

---

[2]Condemnees' proposed instructions 24 and 25 read as follows:

INSTRUCTION NO. 24: Mr. Lockhart, the appraiser for the City, testified as to the faïr market value of the land only, unenhanced in any way by the activities of the Allens. You, however, in making your own determination of the fair market value of the property, may consider any factors or activities which in your opinion enhanced the value of the property.

INSTRUCTION NO. 25: Mr. Lockhart, the appraiser for the City, testified as to the fair market value of the land only. He did not consider the expenditures made by the Allens nor did he consider the potential use value of the land. You, however, in making your determination of the fair market value of the property may consider any competent evidence of matters, not .merely speculative, which would be considered by a prospective vendor or purchaser or which tend to enhance or depreciate the value of the property.

property and to relieve it of the burden of interest accruing on the sum deposited from the date of taking to the date of judgment in the eminent domain proceeding. Secondly, to give the former owner, if his title is clear, immediate cash compensation to the extent of the Government's estimate of the value of the property. . . .

We find that the above purpose is similar to the purpose of HRS § 101. It is apparent that the statute's purpose is to avoid undue hardship by either party caused by protracted litigation. To hold the City rigidly to its estimate would penalize the City for utilizing a statutory procedure designed to alleviate hardships caused by the condemnation proceedings. City officials would tend to make low estimates so as to avoid any possibility that the deposit is excessive. The result of such underestimation would be that the City would be compelled to pay interest on a larger sum from the date of taking to final award. In effect the condemnee gets less cash than what he would normally have received and the City must pay interest on a larger amount. Clearly, the policy of this statute cannot be served by such a harsh approach. As was stated in *Garrow* v. *United States,* 131 F.2d 724, 726 (5th Cir. 1942) , *cert. denied,* 318 U.S. 765 (1943) :

> To award him (condemnee) less than the value of the property taken would be unjust to him; to award him more than its value would be unjust to the public.

Further, we are of the opinion that an "estimate of just compensation and damages" is just that — an estimate. It was not intended in any manner to be dispositive, final or binding as a settlement on the amount due. Its singular purpose is to serve the policy of HRS § 101-29—to alleviate the hardship due to the action. Thus, this estimate has no relevance to the conduct of the primary eminent domain proceeding to determine

just compensation. It follows also that the estimate cannot serve as an admission against interest.

Condemnees claim that they were not given notice of the City's alleged amendment of their estimated just compensation. In fact condemnees were not entitled to any such notice. Had there been a change in the pleadings, due notice of any change is required. HRCP Rule 5. However, the estimate involved here is not part of the pleadings. It is part of a separate procedure under HRS § 101-29 for immediate possession of the condemned property.

Thus, the City is entitled to a restitution of the total excess deposit made for parcel 63 with interest at the rate of 5% per annum from the date of withdrawal of such excess deposit. We believe interest at 5% in this instance is in harmony with our opinion herein relative to blight of summons damage and is proper as a matter of fairness to both parties.

We are of the opinion that after a determination as to those final amounts of just compensation owing on the respective parcels taken, any excess deposit must be set off against a deposit that is deficient. Elementary equitable principles require that the deficiency with regard to parcel 64 including blight of summons damages should have been set off against the excess deposit on parcel 63 with interest at 5%.

*Blight of Summons Damages*

The City next alleges that the trial court erred in finding that the condemnees were entitled to blight of summons damages at the following rates of interest, for the following periods on the then unpaid balances of the respective final awards for parcel 63 and 64, as follows:

9½% per annum from May 23, 1969 to June 9, 1969;

10½% per annum from June 10, 1969 to March 26, 1970;

10% per annum from March 27, 1970 to August 25, 1970.

There is no dispute that the condemnees are entitled to just compensation at the time of taking. However, as part of just compensation, the condemnees are further entitled to interest at a reasonable or proper rate upon the final award from the date of taking until payment is made. *State* v. *Coney,* 45 Haw. 650, 372 P.2d 348 (1962) ; *Honolulu* v. *Lord,* 36 Haw. 348 (1943) ; *Territory* v. *The Honolulu Plantation Co.,* 34 Haw. 859 (1939) .

In *State* v. *Coney, supra* at 660, this court held that the proper or reasonable rate meant the "normal commercial rate during the period of delay, but in the absence of evidence of such commercial rate, the presumption is that the legal or statutory rate is to be applied." The court applied the legal rate of 6% as there was no showing of the normal commercial rate of interest prevailing at the time.

In determining the normal commercial rate in the instant case, the court considered evidence offered by the condemnees of the prime borrowing rates for the periods in question. The City alleges that use of the commercial borrowing rates is erroneous and that the rate paid by banking institutions for certificates of deposits is the normal commercial rate.

We overrule the holding in *State* v. *Coney, supra* at 660, wherein the court held that the proper or reasonable rate was "the normal commercial rate . . . but in the absence of evidence of such commercial rate, the presumption is that the legal or statutory rate is to be applied."

HRS § 101-33 provides that, as a part of just compensation and damages, interest at the rate provided in HRS § 101-25 shall be given from the date of order of possession under HRS § 101-28, 29, until the final judgment is paid. HRS § 101-25 provides that a rate of 5% be used. However, HRS makes no provision for the pay-

ment of interest as blight of summons damages for the period from the date of summons until the date of order of possession.

It is possible that the date of summons and the date of the order of possession could coincide. In that case, assuming the City had deposited the estimate of just compensation in order to procure the order of possession, the City would be required by HRS § 101-33 to pay blight of summons damages at an interest rate of 5% only on the amount that the final judgment exceeded the deposited estimate.

Here, the legislature has clearly provided for a rate to be used to determine blight of summons damages. We believe this to be strongly indicative of the interest rate contemplated by the legislature to be used to compute blight of summons damages.

We therefore see no reason to provide, in this case where there is a time lapse between date of summons and date of order of possession, a different rate for blight of summons damages than that which has been statutorily prescribed. Thus, we are of the opinion that the interest rate of 5% is the proper or reasonable rate to be uniformly applied in computing blight of summons damages, and in computing the applicable time, HRCP Rule 6 shall govern. Furthermore, in calculating blight of summons damages the trial court shall adhere to the following provision in HRS § 101-33: ". . . provided, that *except* in the case of an appeal by the plaintiff as provided in section 101-32, interest shall not be allowed upon any sum paid by the plaintiff to the clerk of the court from the date of the payment. . . ." (Emphasis added.)

We reverse and remand for new trial in accordance with this opinion.

*Robert K. Richardson,* Deputy Corporation Counsel (*Paul Devens,* Corporation Counsel, of counsel) for plaintiff-appellant, cross appellee.

*Frank D. Padgett (Wendell H. Marumoto* with him on the briefs, *Padgett, Greeley, Marumoto and Steiner* of counsel) for defendants-appellees, cross appellants.

---

### CONCURRING AND DISSENTING OPINION OF CIRCUIT JUDGE LANHAM

I concur in the majority decision except with respect to the interest rate to be applied to blight of summons damages, or for interest at a reasonable rate on the final award from the date of the taking until payment is made, with which I dissent. It is true that HRS § 101-25 does provide that if payment of final judgment is delayed for more than thirty days then "interest shall be added at the rate of five percent a year", and HRS § 101-33 provides that:

> the final judgment shall include, as part of the just compensation and damages awarded, interest at the rate provided in section 101-25 . . . .

I agree with the majority opinion that it was undoubtedly the intention of the legislature that this interest rate of five percent also apply to the period of time between the date of summons and the order of possession.

I would hold, however, that the government must pay the legal interest rate of six percent as set forth in § 478-1 for its citizens in general in order to meet the test of the Constitution's requirement of "just compensation". *See City and County of Honolulu* v. *Tam See,* 40 Haw. 429, 431 (1953). The legal rate of six percent set forth in § 478-1 is that which controls most transactions when "there is no express written contract fixing a different rate of interest", and this rate applies to the people generally in their ordinary transactions, and also garnishment proceeding (HRS § 652-4), judgments (HRS § 478-2), and perhaps other items which

further research would reveal. Also, it is noted that the State had once set the interest rate on non-taxable county and municipal bonds at a "rate or rates not exceeding five percent a year" but found it necessary to amend such rate in 1969 to a "rate or rates not exceeding seven percentum per annum". HRS § 47-7 (Supp. 1972). Interest rates payable to the State on various delinquent tax returns are variable but the least is two-thirds percent per month. It seems to me, therefore, that the State has set six percent per year as the minimum fair interest return.

I would hold that the government having in HRS § 478-1 established six percent as being the fair minimum amount of interest to be paid in the absence of written agreements to the contrary, cannot, consistent with the "just compensation" provision of Article I, Section 18 of our State Constitution, apply a different rate to itself than applies to the public in general without any reasonable basis therefor. (For analagous principle *see Service v. Dulles,* 354 U.S. 363 (1957).) Of course, where the government is consenting to be sued, or where an interest rate is set as a partial penalty, this concept would not apply, but where "just compensation" is involved, equality of treatment is one element in the consideration of what is "just".