**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000381
10-NOV-2025
08:00 AM
Dkt. 121 SO**

NO. CAAP-24-0000381

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

STATE OF HAWAIʻI, Plaintiff-Appellee,
v.
JUSTIN P. NAMAUU, Defendant-Appellant

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CASE NO. 2CPC-22-0000680)

**SUMMARY DISPOSITION ORDER**
(By: Nakasone, Chief Judge, Hiraoka and Wadsworth, JJ.)

Justin **Namauu** appeals from the *Judgment; Conviction and Sentence* entered by the Circuit Court of the Second Circuit on April 24, 2024.[1] We affirm.

A grand jury indicted Namauu on five counts: (1) Murder in the Second Degree; (2) Carrying or Use of Firearm in the Commission of a Separate Felony; (3) Ownership or Possession Prohibited (pistol) (4) Ownership or Possession Prohibited (ammunition); and (5) Place to Keep Pistol or Revolver. He pleaded not guilty.

Count 5 was dismissed before trial. A jury found Namauu guilty as charged on the remaining counts. He was sentenced to life in prison with the possibility of parole on count 1, twenty years on count 2, ten years on count 3, and ten

---

[1] The Honorable Michelle L. Drewyer presided.

years on count 4.  Count 1 was to run consecutively to count 2. Counts 3 and 4 were to run concurrently with each other and with counts 1 and 2.  This appeal followed.

Namauu contends: **(1)** the trial court erroneously held his statements to the police were voluntary; and **(2)** the trial court erred by refusing to answer a jury question.

**(1)**  "Whether the defendant invoked his right to counsel and whether he waived the right are primarily questions of fact."  State v. Baker, 147 Hawaiʻi 413, 422, 465 P.3d 860, 869 (2020) (brackets omitted).  Findings of fact are reviewed under the *clearly erroneous* standard.  Id.  Voluntariness depends on "the totality of circumstances surrounding the defendant's statement."  Id. (brackets omitted).  The *de novo* standard of review applies "to the ultimate issue of the voluntariness of a confession."  Id. (cleaned up).

The trial court held a voluntariness hearing on January 12, 2024.  The court received two Maui Police Department (**MPD**) waiver of rights forms into evidence.  Both were signed by Namauu.  One was dated May 23, 2018, and the other was dated May 25, 2018.  The court also received CDs of MPD captain Nelson **Hamilton**'s interviews of Namauu on May 23 and 25, 2018.

Hamilton testified he interviewed Namauu at 7:06 p.m. on May 23, 2018, in the MPD criminal investigation office in Wailuku.  He informed Namauu of his Miranda rights before speaking with him.  Namauu said he understood his rights, wrote "yes" and initialed each section of the MPD form.  During the interview Namauu requested an attorney.  Hamilton then stopped the interview.

Hamilton testified he had further contact with Namauu on May 25, 2018.  Namauu was in an MPD holding cell.  He was going to be charged, so Hamilton took a bail acknowledgment form for him to sign.  Namauu said he wanted to talk about one of the charges.  Hamilton said he couldn't discuss it because Namauu had requested a lawyer.  Namauu said he wanted to talk without a lawyer present.

Hamilton took Namauu to the interview room and reinformed him of his Miranda rights, using the same procedure he used on May 23. When they got to the part about the right to an attorney, Namauu asked about the process to get one. Hamilton said Namauu would either have to call one himself, or after he was charged and went to court, "he'll be assigned an attorney and that could take days, a week or more." Hamilton asked Namauu if he wanted to continue, or did he want a lawyer. Namauu said he wanted to speak without an attorney present, so they "continued with the Miranda form." Namauu initialed each section of the MPD form.

Namauu testified that on May 23, 2018, Hamilton told him the charges were serious, he had to talk to him and sign papers. Namauu said "no, let me talk to a lawyer, then we can talk." Namauu testified that Hamilton said, "no, but all you got to do is just talk to me and sign these papers and then we can get you one lawyer after[.]" Namauu said, "no." Hamilton got mad and left. He came back two days later, pulled Namauu out of his cell, and took him to the back room with his partner. Namauu said, "I want one lawyer for be present with me if I got to talk to you guys." Hamilton said Namauu could have a lawyer after he talked to them. He offered Namauu "two candies, two Cokes, and a plate lunch."

On cross-examination, Namauu was asked whether he agreed to speak with Hamilton without an attorney present. Namauu stated, "[i]n a way, yes in a way . . ." He agreed he signed the MPD Miranda forms on May 23 and May 25. He was asked, "And that's your signature on the May 25th, 2018, indicating you wish to waive your constitutional rights and make a statement; right?"

Namauu answered, "Yes."

The recordings of the May 23 and May 25 interviews were played in open court. After hearing arguments, the trial court stated:

> Well, the Court has listened to State's Exhibit[s] 3 and 4 [the CDs of the interviews]. The May 23rd interview, Court will find that was made voluntarily. Mr. Namauu testified today and in the Court's opinion was less than credible and actually his testimony made no sense whatsoever and didn't comport with the facts, so the Court will find Mr. Namauu's testimony to be not credible.

The trial court found Hamilton's testimony credible. "It is well-settled that an appellate court will not pass upon issues dependent upon the credibility of witnesses and the weight of evidence; this is the province of the trier of fact." Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006).

The trial court ruled:

> After watching the tapes, I'm a hundred percent clear that that discussion was not that Mr. Namauu was demanding or asking for an attorney; it was just how the mechanics of that would work, and Mr. Namauu did not want to wait. He wanted to give a statement. He was told again -- you know, he was asked if he wanted to proceed without an attorney, and again he replied he did want to.
>
> So I find that his statements both on the 23rd and on the 25th were made voluntarily. I do not see any police deception. I do not see any coercion. I did not -- from the tapes, it did not appear that Mr. Namauu was overly tired or intoxicated or mentally unstable. He was very emotional on the 25th when he was giving his statement, but I do find that the statement was given voluntarily, knowingly, and intelligently after he was given his Miranda warnings, so I will allow both statements to be entered at the trial.

The audio on the May 23, 2018 recording and the audio and video on the May 25, 2018 recording support the trial court's findings. Based on our de novo review of the totality of circumstances surrounding Namauu's statements, the trial court's finding of voluntariness was not erroneous. Baker, 147 Hawaiʻi at 422, 465 P.3d at 869.

**(2)** Jury communication no. 1 asked:

> We would like to see the shell casings and an accurate count on how many were found.

"It is within a trial court's discretion to answer a request for information." State v. Chang, 50 Haw. 195, 199, 436 P.2d 3, 6 (1967).

There were "four shell casings and a bullet -- or a cartridge." They were found when the gun was recovered. No shell casings were found at the crime scene.

The trial court and counsel discussed how to respond. Defense counsel wanted "to tell them there were no casings found at the crime scene, but they were found -- you can tell them -- in this ice bag."

The deputy prosecuting attorney (**DPA**) said, "we can't actually tell them any more than what they already heard because . . . then you're testifying."

After further discussions with counsel, the trial court said, "I really think we run a great risk of going afoul if we start telling them what was said in court." The court explained, "What I'm saying is I'm going to ask the jurors to rely on their own memory about what was said on the stand . . . regarding the shells . . . and the casings."

There was a discussion about the shell casings being Exhibit 52 in evidence. The court then stated, "we are agreeing that we're going to send the casings in, and then I'm going to instruct them to rely on their collective memories as to the evidence adduced by the witnesses on the stand and introduced into evidence . . . by either party."

The court recited what it would type on the jury communication and asked, "We're in agreement then?"

Defense counsel responded, "Yeah."

The response to the jury was:

> We will send in the shell casings for you to examine. You are to rely on your collective memory as to how many were found and where they were found.

The response was what counsel agreed to. Namauu waived any objection to the trial court's response. Even if the point hadn't been waived, "the trial court's answer to the jury's question was clear, direct and proper." Chang, 50 Haw. at 199,

436 P.2d at 6. The trial court did not abuse its discretion by answering the jury communication as it did.

The *Judgment; Conviction and Sentence* entered on April 24, 2024, is affirmed.

DATED: Honolulu, Hawaiʻi, November 10, 2025.

On the briefs:

Steven Slavitt,
for Defendant-Appellant.

Renee Ishikawa Delizo,
Deputy Prosecuting Attorney,
County of Maui,
for Plaintiff-Appellee.

/s/ Karen T. Nakasone
Chief Judge

/s/ Keith K. Hiraoka
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge