MONTE CARPENTER, A MINOR, BY V. F. CARPENTER, HIS GUARDIAN AND NEXT FRIEND, *v.* HONOLULU RAPID TRANSIT COMPANY, LIMITED.

No. 2424.

ARGUED NOVEMBER 19, 1940.        DECIDED DECEMBER 14, 1940.

PETERS AND KEMP, JJ., AND CIRCUIT JUDGE CRISTY IN PLACE OF COKE, C. J., ABSENT.

OPINION OF THE COURT BY KEMP, J.

This is an action by a minor approximately three years of age to recover damages for personal injuries alleged to have been caused by the negligence of defendant's bus driver, in the operation of his bus at an excessive rate of speed and without due care. It is undisputed that the infant plaintiff had fallen from the rumble seat of a 1932 Chevrolet coupe after it had gotten onto Twelfth avenue after making the turn from Waialae avenue. The issue then arose on plaintiff's claim that his injuries were the

result of being struck by the bus either as he fell or after he was on the pavement, and that the striking was caused by the negligent operation of the bus which was traveling in the opposite direction. The plaintiff prayed general damages. He also prayed as special damages the medical expense incurred by his father and by him assigned to plaintiff. In the submission of the case to the jury, as to general damages the jury was properly instructed that even though you may believe that plaintiff's mother or father was guilty of negligence at the time of the accident you cannot impute that negligence to plaintiff. The jury returned a verdict for the defendant. Such verdict necessarily involved either a finding by the jury that defendant's bus driver was not guilty of negligence or that the plaintiff had failed to sustain the issue of negligence by a preponderance of the evidence. There was ample evidence, if believed, to justify either finding.

The plaintiff filed a motion to set aside the verdict and for a new trial on the sole ground of alleged misconduct of the jury. The details of the alleged misconduct are set forth in an affidavit of one of plaintiff's counsel attached to and made a part of the motion. After setting forth that neither he nor his associate counsel knew of the facts relating to the conduct of the jury prior to the verdict, the details of the alleged misconduct are set forth. The substance of said affidavit is that on the day following the return of the verdict the foreman of the jury informed him that during the course of the trial and before submission of the case to the jury he, the juror, drove his automobile, which affiant believes is a Chevrolet of a type, weight, size and power different from the Carpenter car, to the scene of the accident and as an experiment drove his car around the corner of Waialae and Twelfth avenues, in the same direction as that taken by the Carpenter car immediately prior to the accident,

at a speed of fifteen miles an hour, in an endeavor to satisfy his own mind as to the approximate location of the Carpenter car at the time of the accident in making a similar turn and in an effort to test the credibility of the witnesses, and that from said experiment he, the juror, reached certain conclusions adverse to the plaintiff; that on the day following the foregoing disclosures another juror informed affiant that during the deliberations of the jury, the results of said experiment were communicated to the other jurors; that the foreman of the jury further informed affiant that the result of said experiment was a factor in reaching a verdict against the defendant (*sic*) and that affiant is informed and believes and therefore avers the fact to be that inasmuch as the results of said experiment were communicated to the jurors, said experiment must have inevitably influenced and did influence the jurors to return a verdict adverse to the defendant (*sic*).

The affidavit of counsel above referred to was not considered as evidence and we think rightfully so. (46 C. J., tit. New Trial § 390, p. 366.) It was merely a part of the pleadings in the proceedings instituted to have the verdict set aside and a new trial ordered. It was necessary for the plaintiff to establish by competent evidence facts legally sufficient to justify the order complained of. In order to establish the facts set forth in the affidavit of counsel the foreman of the jury was sworn as a witness and permitted, over the objection interposed by the defendant that a juror will not be permitted to impeach his own verdict, to testify to the circumstances under which he visited the scene and what he did. Said juror testified, in substance, that while the trial was in progress, the jury having been excused over Saturday, he went on business into the district in which the accident under investigation occurred, driving a car of a different model and weight

than the car in which the plaintiff had been riding. The juror denied that he at any time had any intention of conducting an experiment and said that as he was nearing the scene of the accident he became conscious of the fact that he was approaching the scene; that in rounding the corner and traveling in the same direction which plaintiff's car had traveled, he casually observed his own speed of travel and where this route and speed took his own automobile in relation to the center line of the street on which the accident occurred but that he attached no significance to what he observed; that after the trial was resumed the following week, and during a recess of the court, he and one other juror were conversing in the hallway; that said juror remarked that he had driven around that corner, to which the witness replied, "That's nothing, I did too, the other morning." He further testified that after the case was submitted to the jury, in the hearing of some of the jurors, he told what he had done but that the matter was never mentioned to the jury as a whole during deliberations. All of this evidence having been admitted over the objections of the defendant, the defendant at the close of the juror's evidence moved that said evidence be stricken. The motion was denied and the defendant excepted.

We find nothing in the evidence of the juror sufficient to justify imputing to him any improper motive for being at the *locus in quo*. He was there on his own business during a recess of the trial. The fact that he became aware that he was approaching the scene of the accident and made casual observation under the circumstances related does not justify the conclusion that what he did constituted misconduct. There is nothing in the juror's account of the manner in which he communicated to some of his fellow jurors the fact that he had visited the scene of the accident to indicate any motive or intent on his

part to make use of the incident to divert any juror's mind from the ultimate duty to consider the case on the evidence produced in court. The undisputed fact is that only about one-half of the jurors knew, prior to the verdict, that said juror had visited the scene of the accident.

These observations are made because of the discussions appearing in some of the cases cited by plaintiff's counsel from jurisdictions which do permit jurors to testify to overt acts.

No evidence other than that of the juror above recounted and that of plaintiff's counsel as to what the juror told him was offered in support of the motion. The prayer of the motion was granted and a new trial ordered. The matter is before us on defendant's bill of exceptions.

Defendant's exception number nine raises squarely the question of admissibility of the evidence of a member of the jury to impeach his own verdict. The authorities are not unanimous on this question but as early as 1859 this court, in *James Howland* v. *Samuel Jacobs*, 2 Haw. 155-157, adopted the general rule as laid down by Lord Mansfield in *Vaise* v. *Delaval*, using the following language: "We are of the opinion, as is contended on the part of the plaintiff, that these affidavits are inadmissible; first, as being excluded by the general rule, which forbids the reception of the affidavits or declarations of jurors, to show misconduct in making up their verdict; and, secondly, because neither of these affidavits specifies the name of any particular juror, as having declared that his mind was influenced by extraneous considerations. These objections are well taken. In the United States, and in England, ever since the case of Vaise *v*. Delaval (1 Durnford & East, p. 11), in which judgment was given by Lord Mansfield, the uniform ruling of the Courts, with scarcely an exception, has been to exclude the declarations of jurors from being received for the purpose of impeaching a

verdict by showing misconduct on the part of the jury; and although there may seem to be force in the consideration urged in this case, that the juror whose affidavit is presented in support of the motion, was not a party to the verdict, yet the principal reason of the rule remains applicable. The jury make up and deliver their verdict under the solemnity of an oath, and no declarations of theirs can be received to controvert its truth, by showing misconduct on their part. Such is the general rule, and we think its soundness unquestionable."

In *Brown* v. *Spreckels*, 18 Haw. 91, 116, it was held, without discussion or citation of authority, that it was error to admit the affidavits of jurors that they read the newspaper article complained of; that they would have heeded the request of the judge not to read his published remarks had not defendant's counsel said he had no objection to their reading them and that they rendered their verdict impartially and upon the merits without any regard to the remarks.

The Supreme Court of the United States follows the general rule announced by Lord Mansfield but recognizes that it is subject to exceptions.

*McDonald* v. *Pless*, 238 U. S. 264, 268, which was a typical case of a quotient verdict, was decided in 1915 and, is the latest decision of that court coming to our attention on the general subject of the competency of a juror to testify to facts having a tendency to establish misconduct of himself or his fellow jurors for the purpose of impeaching their verdict. In that case the movant for a new trial offered to prove by one of the jurors facts which, if established by competent evidence, would clearly have required the granting of the motion. The juror was not permitted to testify and on appeal Mr. Justice Lamar, speaking for the court, very clearly set forth the reasons for and the history of the general rule on the subject, and at the same

time recognized that it would not be safe to lay down any inflexible rule because there might be instances in which testimony of the juror could not be excluded without violating the plainest principles of justice. He referred to and differentiated *United States* v. *Reid*, 12 How. 361; *Clyde Mattox* v. *United States*, 146 U. S. 140; and *Hyde* v. *United States*, 225 U. S. 347, 383, the three former decisions of that court which he said were the only former cases in that court presenting the question of the competency of a juror to so testify. In the *Reid* case the question though raised was not decided because not necessary to a determination of the case. In the *Clyde Mattox* case, which was a capital case, in support of a motion for a new trial the affidavits of jurors were rejected by the trial court showing that the bailiff who had charge of the jury after the case had been heard and submitted made statements in the presence and hearing of the jurors, or some of them, prejudicial to the defendant and that while the jury was deliberating and before they had agreed upon a verdict a newspaper published that day and containing comment prejudicial to the defendant was produced and read to the jury. On appeal Chief Justice Fuller, speaking for the court, held that the trial court erred in rejecting the affidavits. Both the statements of the bailiff and the newspaper comment were highly prejudicial to the defendant and the court had excluded a dying declaration of the deceased favorable to the defendant, who was convicted of murder and sentenced to death. The *Hyde* case involved a criminal conspiracy against four defendants. Two were convicted and two acquitted. The supposed misconduct of the jury was made a ground of new trial. Supporting affidavits were made by counsel on information received by them, partly from one of the jurors and partly from a person who had conferences with another juror. The jurors from whom the information was received declined

768

to make affidavit of the misconduct unless required to do so by the court. The alleged misconduct was that, as a result of what amounted to coercion by the court, certain of the jurors who believed that all the defendants should be acquitted exchanged the conviction of two for the acquittal of the other two. The court declined to permit the jurors to give affidavits of said conduct, and on appeal Mr. Justice McKenna, speaking for the court, said:

"But, even conceiving such possibility, we think the court rightly ruled. It was within the issues of the case to convict some of the defendants and acquit others, and we think the rule expressed in *Wright* v. *Illinois & Miss. Tel. Co.*, 20 Iowa, 195, and *Gottleib Bros.* v. *Jasper & Co.*, 27 Kansas, 770, should apply, that the testimony of jurors should not be received to show matters which essentially inhere in the verdict itself and necessarily depend upon the testimony of the jurors and can receive no corroboration."

The following excerpt from the opinion in *McDonald* v. *Pless, supra*, makes it apparent that the court regarded the gravity of the consequence of the conviction in the *Clyde Mattox* case as an extraordinary circumstance requiring departure from the general rule that neither the affidavit nor the evidence of a juror should be received to impeach his verdict and that the general rule applies as well to overt acts outside of the jury room as to acts in the jury room during the deliberations of the jury.

The court said: "There are only three instances in which the subject has been before this court. In *United States* v. *Reid*, 12 How. 361, 366, the question, though raised, was not decided because not necessary for the determination of the case. In *Clyde Mattox* v. *United States*, 146 U. S. 140, 148, such evidence was received to show that newspaper comments on a pending capital case

had been read by the jurors. Both of those decisions recognize that it would not be safe to lay down any inflexible rule because there might be instances in which such testimony of the juror could not be excluded without 'violating the plainest principles of justice.' This might occur in the gravest and most important cases; and without attempting to define the exceptions, or to determine how far such evidence might be received by the judge on his own motion, it is safe to say that there is nothing in the nature of the present case warranting a departure from what is unquestionably the general rule, that the losing party cannot, in order to secure a new trial, use the testimony of jurors to impeach their verdict. The principle was recognized and applied in *Hyde* v. *United States,* 225 U. S. 347, which, notwithstanding an alleged difference in the facts, is applicable here."

In a discussion of the general rule, its history and application, the court said: "But let it once be established that verdicts solemnly made and publicly returned into court can be attacked and set aside on the testimony of those who took part in their publication and all verdicts could be, and many would be, followed by an inquiry in the hope of discovering something which might invalidate the finding. Jurors would be harassed and beset by the defeated party in an effort to secure from them evidence of facts which might establish misconduct sufficient to set aside a verdict. If evidence thus secured could be thus used, the result would be to make what was intended to be a private deliberation, the constant subject of public investigation—to the destruction of all frankness and freedom of discussion and conference.

"The rule on the subject has varied. Prior to 1785 a juror's testimony in such cases was sometimes received though always with great caution. In that year Lord Mansfield in *Vaise* v. *Delaval,* 1 T. R. 11 refused to receive

the affidavit of jurors to prove that their verdict had been made by lot. That ruling soon came to be almost universally followed in England and in this country. Subsequently, by statute in some States, and by decisions in a few others, the juror's affidavit as to an overt act of misconduct, which was capable of being controverted by other jurors, was made admissible. And, of course, the argument in favor of receiving such evidence is not only very strong but unanswerable—when looked at solely from the standpoint of the private party who has been wronged by such misconduct. The argument, however, has not been sufficiently convincing to induce legislatures generally to repeal or to modify the rule. For, while it may often exclude the only possible evidence of misconduct, a change in the rule 'would open the door to the most pernicious arts and tampering with jurors.' 'The practice would be replete with dangerous consequences.' 'It would lead to the grossest fraud and abuse' and 'no verdict would be safe.' *Cluggage* v. *Swan*, 4 Binn. 155; *Straker* v. *Graham*, 4 M. & W. 721."

Although there are decisions to the contrary, we think the great weight of American authority supports the rule announced. *Chadbourn* v. *Franklin*, 5 Gray's 312, 315 (Mass.), is, on the facts, identical with the case at bar. Plaintiff's horse and chaise had collided with defendant's hack and been injured, for which plaintiff sued. After verdict awarding plaintiff damages defendant moved for a new trial and offered one of the jurors as a witness to show that on the Sunday intervening, while the trial was in progress, said juror went to the place where the collision occurred and examined it for the purpose of informing himself upon the subject matter of the trial. The juror was not permitted to so testify, and defendant appealed. In sustaining the ruling of the trial court the supreme court of Massachusetts said: "The modern practice has

been uniform, not to entertain a motion to set aside a verdict on the ground of error, mistake, irregularity or misconduct of the jury, or any of them, on the testimony of one or more jurors; and it rests, we think, on sound considerations of public policy."

In 46 C. J., tit. New Trial § 374, p. 354, the rule is stated as follows: "Under the rule that jurors are not competent to impeach their own verdict, they may not be permitted to stultify themselves, and hence a juror is not competent as an affiant, deponent or witness, to establish misconduct of the jury, whether such misconduct be his own, that of other members of the jury, or that of the jury as a whole." The same authority states the rule applicable to unauthorized views to be: "It is usually considered that jurors are not competent to show that during the trial or during their deliberations there was an unauthorized view or examination of premises or of a thing in controversy by jurors, but there is also authority for the view that jurors are competent to show such matters." 46 C. J., tit. New Trial § 377, p. 356. In support of the view that jurors are not competent to show such matters, cases are cited from California, Idaho, Illinois, Massachusetts, Missouri, New Jersey, New York and Rhode Island. In support of the view that they are competent, cases are cited from Minnesota and Wisconsin.

We conclude that, in order to justify the admission of the evidence of the juror or the evidence of counsel as to what the jurors told him, the case must present circumstances deemed sufficient to justify a departure from the general rule to the effect that a juror is not competent to give evidence to impeach his own verdict. We see no such circumstances in this case.

We also conclude that had the conduct of the juror as disclosed by his evidence been established by competent evidence it would fall short of showing misconduct suffi-

ciently prejudicial to the plaintiff to justify setting aside the verdict. The jurors are presumed to be reasonably intelligent. The casual observations which the juror made at the scene of the accident could hardly be said to have any bearing on any question other than the question of contributory negligence of the mother or father of the plaintiff. The court admonished the jury that such negligence could not be imputed to plaintiff and we must assume that the jury heeded the admonition.

For the reasons assigned, defendant's exception number nine is sustained and the cause remanded, with instructions to vacate the order which set aside the verdict and granted a new trial.

*D. C. Lewis* (*Robertson, Castle & Anthony* on the briefs) for defendant.

*J. P. Russell* (*Thompson & Russell* on the brief) for plaintiff.

