TED STRATIS, SAEKO STRATIS, CHARLES K.C. CHANG, and WINONA L. CHANG, Plaintiffs-Appellants, *v.* PACIFIC INSURANCE COMPANY, LIMITED, SENTINEL INSURANCE COMPANY, LIMITED, HARTFORD FIRE INSURANCE COMPANY, and GAB BUSINESS SERVICES, INC., Defendants-Appellees, and FRANK B. HALL & COMPANY OF HAWAII, INC., Defendant

NO. 10867

(CIVIL NO. 78179)

JUNE 10, 1987

BURNS, C.J., HEEN AND TANAKA, JJ.

2

OPINION OF THE COURT BY TANAKA, J.

In an action involving an alleged breach of a fire insurance policy and alleged bad faith and negligent settlement of the insurance claim, the insureds, plaintiffs Ted Stratis (Stratis), Saeko Stratis, Charles K.C. Chang, and Winona L. Chang (collectively Plaintiffs), appeal from the judgment upon the jury's special verdict in favor of the insurers, defendants Pacific Insurance Company, Limited, Sentinel Insurance Company, Limited, and Hartford Fire Insurance Company (collectively Pacific), and the independent claims adjuster, defendant GAB Business Services, Inc. (GAB) (Pacific and GAB collectively will be referred to as

Defendants where appropriate), and from the order denying Plaintiffs' motion for a new trial (Order). The dispositive issue on appeal is whether the trial court erred in denying Plaintiffs an evidentiary hearing on their motion for new trial which was based, *inter alia,* on alleged juror misconduct. We hold that the court erred, vacate the Order, and remand with direction.

## I. FACTS

On October 7, 1982, a fire damaged one of three similar apartment buildings owned by Plaintiffs and insured by Pacific. After being apprised of the fire damage, Pacific engaged GAB to adjust the fire insurance claim.

On June 21, 1983, Plaintiffs sued Defendants and Frank B. Hall & Co. of Hawaii, Inc. (Hall), the insurance agent that had sold the insurance policy to Plaintiffs.[1] The complaint alleged breach of the insurance contract, bad faith and negligence in the settlement of their claim, "unfair or deceptive acts or practices" entitling them to treble damages, and "wilful, intentional, wanton, malicious, reckless, and grossly negligent" conduct entitling them to punitive damages.

A jury trial commenced on May 8, 1985. On that day, Plaintiffs orally dismissed all claims against Hall,[2] and Hall did not participate in the trial. On May 30, 1985, the jury returned a special verdict which read, in pertinent part, as follows:

*Question No. 1.* Did Defendants Pacific breach the contract with respect to the damage to the building?

Answer Yes or No in the space provided below.

        YES \_\_\_\_      NO _X_

IF YOUR ANSWER IS "NO" TO QUESTION NO. 1, GO TO QUESTION NO. 3.

\*     \*     \*

---

[1] Regarding the subject insurance policy, Frank B. Hall & Co. of Hawaii, Inc. (Hall) was the selling agent for Pacific Insurance Company, Limited (Pacific Insurance) and its subsidiary, Sentinel Insurance Company, Limited. Pacific Insurance, a subsidiary of Hartford Fire Insurance Company (Hartford), was an authorized agent of Hartford.

[2] Hall was formally dismissed by stipulation of the parties filed on June 3, 1986.

*Question No. 3.* Did Defendants Pacific breach the contract with respect to the loss of rents?

Answer Yes or No in the space provided below.

· YES ____        NO _X_

IF YOUR ANSWER IS "NO" TO QUESTION NO. 1 AND QUESTION NO. 3, GO TO QUESTION NO. 7.

* * *

*Question No. 7.* Are Defendants Pacific liable for bad faith?

Answer Yes or No in the space provided below.

YES ____        NO _X_

IF YOUR ANSWER IS "NO" TO QUESTION NO. 7, THEN GO TO QUESTION NO. 11.

* * *

*Question No. 11.* Do you find that Plaintiffs are entitled to recover punitive damages against Defendants Pacific?

Answer Yes or No in the space provided below.

YES ____        NO _X_

IF YOUR ANSWER IS "NO" TO QUESTION NO. 11, THEN GO TO QUESTION [NO.] 13.

* * *

*Question No. 13.* Was GAB negligent?

Answer Yes or No in the space provided below.

YES ____        NO _X_

IF YOUR ANSWER IS "NO" TO QUESTION NO. 13, THEN DO NOT ANSWER QUESTIONS [NOS.] 14 and 15.

Upon being polled, the jurors indicated they had divided 10-2 on Question Nos. 1 and 3 and were unanimous on Question Nos. 7, 11, and 13.

After the entry of a judgment on the special verdict, Plaintiffs moved for a new trial. Upon denial of their motion, Plaintiffs appealed.[3]

---

[3] On November 22, 1985, Pacific filed a motion to dismiss the appeal "on the grounds that a timely Notice of Appeal has not been filed[,]" in which GAB Business Services, Inc. (GAB) joined. On December 16, 1985, the supreme court denied the motion.

In their answering briefs, Pacific and GAB raise the appellate jurisdiction issue again. In light of the earlier disposition of the motion to dismiss the appeal, however, we will not discuss the issue here.

## II. JUROR MISCONDUCT

Plaintiffs' motion for new trial alleged, *inter alia*, that they "were not afforded a fair trial by virtue of a juror's personal inspection of the site of the fire[.]" Record Vol. 4 at 234. In his affidavit in support of the motion, Stratis stated that on Memorial Day, May 27, 1985,[4] while driving his car he noticed a juror walking on the public sidewalk on the street where the fire-damaged building was located. Believing that the juror was just passing by, Stratis thought nothing about it at that time. Stratis stated that post-verdict questioning of the maintenance man and a tenant of an undamaged apartment building disclosed that the juror, Norma Whelan (Whelan), had conducted a personal inspection of the damaged building and the nearby areas.

Plaintiffs requested an evidentiary hearing and subpoenaed Whelan. At the hearing, relying on *Carpenter v. Honolulu Rapid Transit Co., Ltd.*, 35 Haw. 761 (1940), the trial court ruled that there were no "extraordinary circumstances which would warrant an evidentiary hearing or testimony by the juror." May 29 & 30 and Aug. 7, 1985 Transcript at 375.

We hold that the rule in the *Carpenter* case has been superseded by Rule 606(b), Hawaii Rules of Evidence (HRE), Hawaii Revised Statutes (HRS) Chapter 626 (1985),[5] and the juror was competent to testify about *objective* misconduct and irregularities.[6] Consequently, the trial court abused its discretion in denying an evidentiary hearing and thereby precluding Whelan's testimony.

In *Vaise v. Delaval*, 1 T.R. 11, 99 Eng. Rep. 944 (K.B. 1785), Lord Mansfield adopted the rule forbidding the reception of affidavits and declarations of jurors to show misconduct in arriving at their verdict. The rule became the prevailing rule in American jurisdictions. *See McDonald v. Pless*, 238 U.S. 264, 35 S. Ct. 783, 59 L. Ed. 1300 (1915).

---

[4] The jury began its deliberation in the case at 9:09 a.m. on May 30, 1985.

[5] The Hawaii Rules of Evidence took effect on January 1, 1981.

[6] None of the parties mentioned Rule 606(b), Hawaii Rules of Evidence (HRE), in prosecuting or resisting the motion for new trial in the court below.

As early as 1859, our supreme court adopted the Lord Mansfield rule. *See Howland v. Jacobs,* 2 Haw. 155 (1859). In 1940, the court referred to the *Howland* case and concluded:

> [I]n order to justify the admission of the evidence of the juror or the evidence of counsel as to what the jurors told him, the case must present circumstances deemed sufficient to justify a departure from the general rule to the effect that a juror is not competent to give evidence to impeach his own verdict.

*Carpenter v. Honolulu Rapid Transit Co., Ltd.,* 35 Haw. at 771.

However, under Rule 606(b), HRE, a juror is only incompetent to "testify concerning the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict . . . or concerning his mental processes in connection therewith."[7] A juror is competent, however, to testify "about objective misconduct and irregularities." Commentary to Rule 606.[8] Thus, under Rule 606(b), a juror is competent "to testify to juror irregularities such as intoxication, exposure to threats, acceptance of bribes, or possession of knowledge relevant to facts in issue obtained not through the introduction of evidence but acquired prior to trial or during trial through unauthorized views, experiments, investigations, news media, books or documents or through consultation with parties, witnesses or others, or through other extra-record channels, regardless of whether the jury misconduct occurred within or without the jury room." 3 J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 606[04] at 606-29 through 606-32 (1985) (footnotes omitted). Moreover, under Rule 606(b), a juror may testify regarding the improper statements made to other jurors within the jury room, although any testimony as to the effect

---

[7] Rule 606(b), HRE, reads in its entirety:

(b) Inquiry into validity of verdict or indictment. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify concerning the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith. Nor may his affidavit or evidence of any statement by him indicating an effect of this kind be received.

[8] The Commentary to Rule 606 states in part:

The intent of this subsection [606(b)] is to strike a proper balance by excluding testimony relating to the internal deliberative process and allowing testimony about objective misconduct and irregularities.

of such statements upon them would be improper. *State v. Larue,* 68 Haw. ____, 722 P.2d 1039 (1986). *See also* Commentary to Rule 606.

The unauthorized view of the premises by a juror "is not in and of itself prejudicial in the absence of a showing that it influenced or affected the verdict." 75 Am. Jur. 2d *Trial* § 984 at 829 (1974) (footnote omitted). Here, the trial court found that Whelan's viewing of the damaged building was not "materially [sic] enough to prejudice the jury's decision[.]" May 29 & 30 and Aug. 7, 1985 Transcript at 386. The court, however, was premature in its finding. Without Whelan's affidavit or testimony as to what she specifically viewed or inspected and what, if anything, she communicated to the other jurors in or outside of the jury room, there is no substantial evidence supporting the court's crucial finding.

Defendants contend that Plaintiffs waived their juror misconduct claim by raising their objection only after the adverse special verdict had been rendered. Plaintiffs argue, however, that although Stratis saw Whelan in the vicinity of the burned building, he "thought nothing of seeing the juror on the sidewalk" because there were "many restaurants in the area[.]" Record Vol. 4 at 259, 260. Whelan's presence became significant only after a post-verdict conversation between Plaintiffs' attorney and Whelan indicated that she may have conducted an unauthorized pre-verdict view of the premises.

The general rule is that where the juror misconduct is known by a party or his counsel, "he cannot await verdict and then complain." *Bachran v. Morishige,* 52 Haw. 61, 70, 469 P.2d 808, 813 (1970) (quoting *Medeiros v. Udell,* 34 Haw. 632, 634 (1938) ). However, the record indicates that the trial court did not consider the waiver issue. The trial court should address this issue upon remand.

Accordingly, the Order must be vacated and the case remanded with direction that the trial court conduct an evidentiary hearing on the matters of juror misconduct and waiver thereof.

Plaintiffs' motion for new trial included two grounds other than juror misconduct. If, based on the evidentiary hearing upon remand, the trial court grants a new trial because of juror misconduct, the two other grounds are rendered moot. However, if a new trial is not granted because of juror misconduct, those two other grounds remain viable. Thus, to preclude another appeal, we will discuss those grounds.

### III. JURY'S QUESTIONS TO THE COURT

After deliberating about four and one-half hours, the jury sent a communication to the court posing the following questions:

> 1. If you answer No to question 7, why can we still consider punitive damages in question 11?
> 2. What is the difference between Bad Faith and Negligence[?]

Record Vol. 4 at 148.

Over Plaintiffs' objection, the trial court sent the following written response into the jury room:

> 1. If your answer to Question 7 is "NO," then you may not award punitive damages.
> 2. You should determine the difference between Bad Faith and Negligence on the basis of Court's instructions previously given to you.

Record Vol. 4 at 149.

Plaintiffs claim error because the court's first response "was too restrictive and precluded any consideration of punitive damages by the jury against [Pacific] with respect to the other causes of action" and the second response "was no response at all and . . . left the jury as confused and uncertain as ever."

#### A. *Punitive Damages*

Basically, Plaintiffs argue that Pacific may be liable for punitive damages even if it was not liable for bad faith since punitive damages may be awarded if Pacific's breach of the insurance contract was wanton and reckless. However, in its answers to Question Nos. 1 and 3, the jury had found that Pacific did not breach the contract.

Since the jury found that Pacific was not liable for breach of contract or for bad faith, the question of punitive damages is moot. *See Wohlschlegel v. Uhlmann-Kihei, Inc.,* 4 Haw. App. 123, 662 P.2d 505 (1983).

#### B. *"Bad Faith" and "Negligence"*

Plaintiffs claim that the trial court erred in failing to reread the instructions defining negligence and bad faith or to explain the

difference in some other manner. We disagree.

Answering a jury's request for information "is within a trial court's discretion[.]" *State v. Chang,* 50 Haw. 195, 199, 436 P.2d 3, 6 (1967). Here, the jury did not request the rereading of the instructions defining bad faith and negligence. Moreover, the trial court indicated its reluctance to reread the instructions because the instruction regarding negligence was "a very simple instruction" while those on bad faith were "quite voluminous and really directed towards the Defendants' specific acts." May 29 & 30 and Aug. 7, 1985 Transcript at 303. The court also indicated that if the jury was dissatisfied, it would "then decide whether or not to reread the Court's Instructions on bad faith and negligence as requested." Apparently, the jury was satisfied and did not further communicate with the court.

The court's response was "clear, direct and proper." *State v. Chang,* 50 Haw. at 199, 436 P.2d at 6. We find no abuse of discretion under the circumstances.

## IV. JURY INSTRUCTIONS

The trial court refused Plaintiffs' jury instruction nos. 38, 39, 40, 41, 42, 43, and 44. Plaintiffs assert that the court reversibly erred in refusing those instructions. We disagree.

Instruction no. 38[9] is copied verbatim from subsections (1)

---

[9] Plaintiffs' instruction no. 38 reads:

The following may be considered as unfair claim settlement practices:

1. Misrepresenting to claimants pertinent facts or policy provisions relating to coverages at issue;
2. Failing to acknowledge with reasonable promptness pertinent communications with respect to claims arising under its policies;
3. Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under its policies;
4. Not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear; or
5. Compelling policyholders to institute suits to recover amounts due under its policies by offering substantially less than the amounts ultimately recovered in suits brought by them.

If you find that the Defendants did any of the above acts, you may consider this as evidence of unfair or deceptive practices.

through (5) of HRS § 431-647(a) (1976) which set forth acts constituting unfair claim settlement practices. Instruction nos. 39, 40, and 43 are reiterations of HRS § 431-647(a)(2), (3), and (4), respectively. Instruction nos. 41 and 42 are taken verbatim from HRS § 431-643(10) (D) and (M), respectively, which took effect on June 7, 1983 (Act 211, § 3, 1983 Haw. Sess. Laws 423, 428-29), after the alleged unfair claim settlement practices of Pacific had occurred. Instruction no. 44 states:

> An insurer may breach the covenant of good faith and fair dealing in an insurance contract when it fails to properly investigate insured's claim.

Instruction no. 44 is somewhat similar to instruction no. 40.

A trial court is not obligated to give any requested instruction which "does not state the law with substantial correctness." 75 Am. Jur. 2d *Trial* § 590 at 571 (1974). *See McKeague v. Talbert,* 3 Haw. App. 646, 658 P.2d 898 (1983); *Campbell v. Hipawai Corp.,* 3 Haw. App. 11, 639 P.2d 1119 (1982). Plaintiffs' instructions did not correctly state the law. HRS § 431-647(a) (1976) provided that the specified acts constitute unfair claim settlement practices "if committed without just cause and performed with such frequency as to indicate a general business practice[.]" Since requested instruction nos. 38, 39, 40, 43, and 44 failed to include the qualifying clause and since requested instruction nos. 41 and 42 were based on a statute not in effect at the time of the alleged unfair claim settlement practices, the trial court did not err in refusing them.

Moreover, the record indicates that Plaintiffs accepted their instruction no. 45A, as modified, as a substitute for instruction no. 38. In our view, this fact indicates a waiver of Plaintiffs' objection to the court's refusal of their requested instructions in question.

## V. CONCLUSION

For the reasons set forth in Part II, *supra,* we vacate the order denying Plaintiffs' motion for new trial filed on September 11, 1985, remand the case, and direct the trial court to conduct an evidentiary hearing on the issues of juror misconduct and waiver thereof.

Order vacated and remanded for further proceedings consistent with this opinion.

Ronald G.S. Au (Connie G.W. Meredith with him on the briefs) for plaintiffs-appellants.

James F. Ventura (Calvin E. Young with him on the brief; Libkuman, Ventura, Ayabe & Hughes, of counsel) for defendants-appellees Pacific Insurance Company, Limited, Sentinel Insurance Company, Limited, and Hartford Fire Insurance Company.

Peter C.-P. Char (Glenn I. Kimura and Philip M. Andersen with him on the brief; Char Hamilton Campbell & Thom, of counsel) for defendant-appellee GAB Business Services, Inc.